WILLIAM WATSON *et al.*, Plaintiffs-Appellees, *v.* STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellant.

Third District No. 3—83—0296

Opinion filed March 6, 1984.—Rehearing denied April 13, 1984.

Roger A. Bixby and Vivian K. Yamaguchi, both of Epton, Mullin, Segal & Druth, Ltd., of Chicago, for appellant.

Blanke, Norden, Barmann & Bohlen, P.C., of Kankakee, for appellee Juanita McDermott.

Leonard F. Sacks, Dennis J. Baron, and Christopher Bohlen, all of Kankakee, for appellee William Watson.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiffs, William Watson and his former wife, Juanita McDermott, brought suit against defendant, State Farm Fire and Casualty Company, seeking to recover under a policy of insurance for fire damage to their residence and its contents. The circuit court of Kankakee County directed a verdict, entering judgment against the defendant and in favor of both plaintiffs.

The plaintiffs' residence and personal property were insured by the defendant providing coverage for real estate in the amount of $42,600, personal property in the amount of $21,300 and Watson's living expenses in the amount of $2,100. On December 9, 1977, at approximately 1:53 a.m., a fire occurred destroying the residence and its contents. At that time, the plaintiffs had recently separated and McDermott was no longer living at the marital residence. On the evening of the fire, there were heavy snows and high winds. Some streets were blocked with snow and driving was hazardous.

The defendant received notice of the fire the day it occurred and later took several statements from the plaintiffs. In Watson's initial statement, he indicated that on the day before the fire, he had consulted with his attorney for the first time regarding his wife's recently filed divorce suit. He then went to a bar and to K-Mart before returning home in the early evening. He later left his home again to go Christmas shopping and to have dinner. The Watson children were spending the evening at a friend's home.

Watson stated that he returned home at approximately 11 p.m., and after cleaning the basement and washing some clothes, he went to bed. Thereafter, shortly before 2 a.m. the next morning, a patrolman with the Kankakee County sheriff's police observed flames in the Watson residence and Watson exiting the premises through a window. In a later statement Watson indicated that he had previously attempted to sell his house and at the time he had considered moving to Florida to start his own business.

Approximately a year and one-half after the fire occurred, it was discovered that on the evening of the fire Watson was accompanied by a woman to a bar and later returned with her to his residence. While she was present in Watson's house she smelled nothing unusual. Watson discussed his impending divorce with her and appeared to be depressed. She stayed with Watson until 10 p.m., at which time Watson drove her home.

John Maurus, a fire investigator, inspected the fire site after the fire had occurred. He observed low-altitude flame damage in the base-

ment and heavy charring underneath a basement staircase having no ascertainable natural cause. Watson stated that to his knowledge there was no paint, thinner or gasoline stored beneath the stairs prior to the fire. Maurus also observed unconnected low burning in the southeast and north areas of the basement representing two separate heat sources.

In his examination of causative agents, Maurus eliminated the furnace, electrical wiring, the electrical distribution box, the hot water heater, the cooking range, the air conditioner and several television sets. He found no signs of electrical fault or short circuiting in the appliances, and Watson had had no prior problems with them.

Maurus removed eight samples from the fire site and transported them to a laboratory for analysis by an analytical chemist. The samples were tested on a chromatograph in January of 1978. A chromatograph is a chart with peaks and valleys indicating the chemical composition of a substance. The chromatographs for the fire samples were compared to various known standards and five of the eight samples were found to be similar to gasoline and, to a lesser extent, paint thinner.

During the course of the investigation, no information was discovered to indicate that Juanita McDermott was in any way connected with the fire. McDermott completed a proof of loss form and a loss of contents form. Thereafter, the defendant requested additional information on several occasions concerning her insurable interest. In the meantime, the defendant paid the mortgage balance on the real property and took a "pro tanto" assignment from the mortgagee for the portion paid to the benefit of Watson.

On May 16, 1978, the defendant denied Watson's claim based on its suspicion of arson. The defendant did not deny McDermott's claim.

Watson filed suit against the defendant on October 26, 1978, and McDermott filed her suit on November 27, 1978, claiming an undivided one-half interest in all of the property destroyed. The defendant admitted liability as to McDermott but denied she had established her insurable interest. One year later, the defendant tendered the sum of $10,909.53 to the court for the benefit of McDermott's interest in the personal property.

The two causes of action were consolidated, and at trial the court directed a verdict and entered judgment thereon against the defendant and in favor of both plaintiffs. At a separate hearing following the trial, the court granted the plaintiffs' request for attorney fees, costs and penalties under section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 767).

The defendant has requested that we review the following issues: (1) whether the trial court erred in directing a verdict against the defendant and in favor of both plaintiffs; (2) whether the trial court erred in precluding testimony by the defendant's expert witness as to his opinion regarding the origin of the fire; and (3) whether the trial court improperly assessed attorney fees, costs and penalties against the defendant under section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 767).

Directed verdicts are appropriate only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand, *Pedrick v. Peoria & Eastern RR. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

In *Gregory's Continental Coiffures & Boutique, Inc. v. St. Paul Fire & Marine Insurance Co.* (7th Cir. 1976), 536 F.2d 1187, the court determined that there was sufficient evidence of arson to allow the case to go·to the jury. Evidence of the insured's motive, an extremely precarious financial situation, and opportunity, possession of the only key to the premises, in addition to the presence of gasoline drums purchased by the insured on the premises, precluded the entry of a directed verdict in favor of the insured. The court stated that the resolution of any apparent conflict in the evidence was the function of the jury, not that of the judge, and that arson is often incapable of direct proof, evidence thereof being necessarily circumstantial.

In the case at hand, the trial court improperly directed a verdict in favor of Watson. The defendant's evidence was not incapable of being viewed as sufficient to establish arson and to link Watson with the origin of the fire. Any questionable aspects of Maurus' expert analysis of the incendiary nature of the fire should have been assessed by the jury, not by the judge. In addition, the probability of Watson's motive and opportunity should have been left to the jury's determination.

The defendant also contends that Watson's fraudulent concealment of a material fact relative to the fire, namely the presence of a woman with him at his residence on the night of the fire, rendered the insurance policy void according to its terms. As a matter of law we cannot say that such is the case, and we are of the opinion that such determination is within the province of the jury.

As for the propriety of the directed verdict in favor of McDermott, the defendant has never denied liability with respect to her. The only dispute lies in the assessment of damages.

With reference to the real property claim, the trial court

credited one-half of the mortgage payments ($12,084.05) against McDermott's claimed one-half interest in the real property ($21,300) rather than utilizing the entire mortgage payment made by the defendant ($24,168.09) as full payment of her claim. We believe that McDermott's interest in the real property should only be charged with one-half of the mortgage liability, which is also the conclusion of the trial court. Any excess mortgage payment ultimately determined to have been made by the defendant, if Watson is precluded from recovery, should be recoverable from Watson and not from his former wife.

■ The trial court struck the testimony of the defendant's expert witness, Maurus, as to how the burn patterns he observed at the Watson home differed from burn patterns resulting from accidental fires and as to his opinion of whether the fire was accidental. We find that the exclusion of this testimony was error.

The rule of law that testimony on ultimate issues is admissible only upon subjects beyond the understanding of the average juror, is outdated law. It is now well established that an expert may directly express his opinion on an ultimate issue. (*Perschall v. Metropolitan Life Insurance Co.* (1983), 113 Ill. App. 3d 233, 446 N.E.2d 570.) The modern standard for the admissibility of expert testimony in general is whether the testimony will aid the jurors understanding. (*Binge v. J.J. Borders Construction Co.* (1981), 95 Ill. App. 3d 238, 419 N.E.2d 1237.) The expert's testimony excluded by the trial court falls within this modern standard and should have been admitted into evidence.

Section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 767) provides that in an action by or against an insurance company wherein there is an issue of liability on a policy of insurance, an insured can recover attorney fees and costs plus a penalty not to exceed $5,000 in the event the conduct of the insurer in resolving the issue of liability is vexatious and unreasonable.

■ Because we have previously determined that the directed verdict in favor of Watson was error, we must conclude that the defendant's assertion of arson as a reason for denial of liability was not unreasonable or vexatious but a legitimate policy defense based upon the defendant's investigation of the fire. Thus, the trial court's award of attorney fees, costs and a $5,000 penalty under the statute as to Watson's claim was improper.

■ In McDermott's case the award of attorney fees, costs and a $5,000 penalty was not error. The defendant never denied liability with respect to McDermott, and McDermott submitted all proof of loss and claim forms to the defendant when requested. Subsequently, the defendant made general inquiries into McDermott's insurable in-

terest and stated that it would not agree to be bound by any court decision in the insured's divorce case. McDermott has always maintained that her insurable interest was a one-half undivided interest in the residence and its contents. Almost a year after the fire had occurred, McDermott was compelled to file an action to recover under the fire insurance policy because of the defendant's failure to compensate her loss. The defendant's conduct in unduly delaying payment of McDermott's claim was clearly unreasonable and vexatious behavior within the meaning of section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 767) and entitled McDermott to an award of attorney fees, costs and a penalty thereunder.

■ A question has also arisen as to the propriety of the trial court's award of "other costs" and attorney fees under said statute. "Other costs" is not specifically defined by statute or by case law. It is our opinion that other costs should be given a broad interpretation in keeping with the general intent of the statute, namely to place the insured in as good a position as he would have been had the insurer paid the value of the claim when requested.

The insurer's failure in this respect would require it to reimburse the plaintiff for all expenses involved in the preparation for trial and the trial of the cause of action itself. The trial court did precisely that in allowing McDermott the recovery of certain telephone calls, fees for a private special process server, the costs of obtaining copies of deposition transcripts and copying costs for copies of documents related to McDermott's divorce. No distinction should be drawn for items not specifically used at trial. Any costs incurred which were found to be reasonably necessary at the time in the preparation of the case for trial should be recoverable.

As for attorney fees allowed McDermott by the trial court, we find sufficient support for the amount of the award. Evidence was presented establishing the reasonableness of the award utilizing an hourly rate computation, and we see no error in this respect.

Accordingly, for the reasons set forth above the judgments in favor of McDermott are affirmed, the judgments in favor of Watson are reversed and his case is remanded to the trial court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.

ALLOY and SCOTT, JJ., concur.