AMERICAN CENTENNIAL INSURANCE COMPANY, a Delaware Corporation, Plaintiff,

v.

AMERICAN HOME ASSURANCE COMPANY, a New York Corporation, and Parmelee Transportation Company, an Illinois Corporation, Defendants.

UNITED EQUITABLE INSURANCE COMPANY, an Illinois Corporation, Plaintiff,

v.

AMERICAN HOME ASSURANCE COMPANY, a New York Corporation, Defendant.

Nos. 89 C 2489, 89 C 2790 and 89 C 3139.

United States District Court, N.D. Illinois, E.D.

Feb. 7, 1990.

Robert M. Greco and Marshall L. Blankenship, Schuyler, Roche & Zwirner, Chicago, Ill., for United Equitable Ins. Co.

Robert Marc Chemers, Robert J. Franco, James P. Moran and Mark D. Roth, Pretzel & Stouffer, Chtd., Chicago, Ill., for American Home Assur. Co.

Robert D. Kolar and Michele T. Oshman, Robert D. Kolar & Associates, Ltd., Chicago, Ill., for American Centennial Ins. Co.

John I. Grossbart, Harold C. Hirshman, Katharine B. Devoid and Deborah K. Sorell, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for Parmelee Transp. Co.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

The plaintiffs in these consolidated cases are excess insurance carriers who are suing, *inter alia,* a primary carrier alleging that it breached certain duties owed to them as excess carriers. These cases are now before the court on the motions of defendant American Home Assurance Company ("American Home") to dismiss count two of each complaint for failure to state a claim upon which relief may be granted. For the reasons set forth below, American Home's motions are denied.

## BACKGROUND

When deciding a motion to dismiss, this court must accept as true all well-pleaded facts alleged in the plaintiff's complaint and all inferences which may be reasonably drawn therefrom. *Gray v. County of Dane,* 854 F.2d 179, 182 (7th Cir.1988). The alleged facts in these cases are straightforward. On November 25, 1979, Dr. Peter Bright–Asare was a passenger on an air transport bus which was involved in an accident while being operated by Continental Air Transport Company, Inc., the predecessor of Parmelee Transportation Co. ("Continental/Parmelee"). On May 19, 1980, Dr. Bright–Asare filed suit against Continental/Parmelee in the Circuit Court of Cook County, Illinois seeking recovery for personal injuries suffered in the accident. On December 14, 1988, a jury returned a verdict in favor of Dr. Bright–Asare in the amount of $7,746,200. A judgment in that amount plus costs and interest was subsequently entered.

At all relevant times, American Home was Continental/Parmelee's primary liability carrier. The policy issued by American Home had a stated limit of $1,000,000. American Centennial Insurance Co. ("American Centennial") was one of Continental/Parmelee's excess carriers. United Equitable Insurance Company ("United"), pursuant to a Reinsurance and Assumption Agreement with United Fire Insurance Company, was another one of Continental/Parmelee's excess carriers. At all relevant times, American Home was aware that the policy which it had issued to Continental/Parmelee was primary to excess policies specifically identifying its policy as underlying insurance.

On July 18, 1980 American Home advised Continental/Parmelee by letter that it had concluded that the amount recoverable in Dr. Bright–Asare's lawsuit against Continental/Parmelee could exceed the $1,000,000 limit of American Home's primary policy. At an October 31, 1988 pretrial conference, Dr. Bright–Asare's counsel made a $300,000 settlement demand. The attorneys which American Home had retained to defend Continental/Parmelee, Epton, Mullin & Druth, Ltd. ("Epton, Mullin"), countered with a $100,000 offer at American Home's direction. At a November 29, 1988 pretrial conference, Dr. Bright–Asare's counsel made a $1,500,000 settlement demand. American Home, through Epton, Mullin, countered with a $300,000 offer.

The complaints allege eight "negative factors" of which American Home was aware by the time of the October 31, 1988 pretrial conference which point to the conclusion that American Home knew that Continental/Parmelee's liability to Dr. Bright–Asare could exceed the limit of American Home's policy.

Based on the above-summarized factual allegations, United and American Centennial argue that American Home, as a primary carrier, owed a "fiduciary duty" to them as excess carriers. They further allege that American Home breached this duty in the following manner:

"[American Home] carelessly and negligently fail[ed] to settle the [Dr. Bright–Asare] matter within [American Home's] policy limits when it had the opportunity to do so and when it knew that any reasonable and prudent evaluation of the facts and the circumstances known to it on and before October 31, 1988 would have led any reasonable insurer to accept the $300,000 settlement demand proposed by Bright–Asare through his counsel at the October 31, 1988 pretrial conference. The potential for exposure and negative factors militating in favor of the settlement demand proposed by Bright–Asare through his counsel were so overwhelming that the failure of American Home to settle the matter within its policy limit when the opportunity [a]rose constitutes negligence ..."

The complaints allege causation, i.e., that Dr. Bright–Asare's lawsuit would have been settled within American Home's policy limit but for American Home's negligent failure to settle, and damages, i.e., that "demands have been made" of United and American Centennial to pay their policy limits in satisfaction of Dr. Bright–Asare's judgment.

The complaints seek a declaration that American Home is liable to American Centennial and United for any amounts which American Centennial and United may be deemed obligated to pay to or on behalf of Continental/Parmelee in satisfaction of Dr. Bright–Asare's judgment.

## ANALYSIS

As a preliminary matter, this court notes that all parties to this diversity action have assumed, without arguing, that the substantive law of the forum state of Illinois applies to this case. In such a situation, this court will apply the forum state's substantive law. *Checkers, Simon & Rosner v. Lurie Corp.*, 864 F.2d 1338, 1345 (7th Cir.1988), *citing In the Matter of Iowa Railroad*, 840 F.2d 535, 543 (7th Cir.1988).

## BREACH OF DUTY

In both of its motions to dismiss, American Home argues that the complaints fail to state a claim upon which relief may be granted because, under Illinois law, a primary carrier owes no direct duty [1] to an excess carrier to settle a claim against their insured within the limits of the primary policy when a reasonable primary insurer under the same facts and circumstances would have done so.

In two footnotes, American Home cites *Scroggins v. Allstate Ins. Co.*, 74 Ill. App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718 (1st Dist.1979) and *Yelm v. Country Mutual Ins. Co.*, 123 Ill.App.2d 401, 259 N.E.2d 83 (3d Dist.1970) for the propositions that "[an] insurer does not owe a duty to exercise good faith or due care to anyone except its insured" and that "Illinois has recognized that an insurer's duty to settle is owed only to its insured." However, both of these cases involved judgment creditors of the insured suing the insured's carrier for bad faith refusal to settle. There is a qualitative difference between the positions of a potential judgment creditor and an excess carrier with regard to the settlement of claims against an insured. A potential judgment creditor is usually not likely to suffer damages when a primary carrier fails to settle the potential judgment creditor's claim against the insured and may in fact benefit from such a refusal if the judgment exceeds policy coverage. In contrast, an excess carrier can only be harmed when a primary carrier fails to settle a claim against the insured within the primary policy limit.

American Home concedes that no Illinois court has addressed the precise issue in this case. Thus, this court is presented with an unsettled question of state law

1. Neither United nor American Centennial claim that they can recover from American Home on an equitable subrogation theory.

which it must resolve as it thinks the Illinois Supreme Court would resolve it. *Strader v. Union Hall, Inc.*, 486 F.Supp. 159, 161 (N.D.Ill.1980), *citing Eckenrode v. Life of America Ins. Co.*, 470 F.2d 1, 3 (7th Cir.1972).

American Home cites three cases from other jurisdictions in which the courts allegedly refused to impose a direct duty of care on a primary carrier in favor of an excess carrier. American Home argues that those cases illustrate the better rule of law on this issue. However, one of those cases does not stand for the proposition for which American Home cites it. The holding in another one of those cases is conclusory and unconvincing. The other case is factually inapposite to the cases at bar.

Contrary to American Home's contention, the court in *Commercial Union Ins. Co. v. Medical Protective Co.*, 426 Mich. 109, 393 N.W.2d 479 (1986), did *not* find that a primary insurer does not owe a direct duty of care to an excess insurer when negotiating the settlement of a claim against their insured. In fact, the court expressly left that issue open, stating that "[a]fter an examination of the facts in the instant case, we conclude that it is not the most appropriate case on which to decide the application of the direct duty rule." *Id.* 393 N.W.2d at 485. (The particular facts to which the court was referring were various allegations indicating that the excess carrier had participated in the later-complained-of settlement negotiations. This is a factual distinction from the cases at bar). In the same paragraph, the court referred to the direct duty theory as an "appealing" theory. *Id.* Furthermore, the court implied that at least in some circumstances, it would impose a direct duty on a primary carrier towards an excess carrier. The court stated:

> We decline to state that under certain conditions, a direct duty of good faith and due care from a primary insurer towards an excess insurer is inappropriate. Whether a primary insurer owes a duty to act in good faith or with due care toward an excess insurer as well as the insured is analogous to the question whether a manufacturer owes a duty to act with due care towards an ultimate purchaser as well as a retailer of his product, or whether a professional who undertakes a service in a contract owes a duty to act with due care toward third parties who foreseeably will be affected as well as toward the person with whom the professional makes the contract. This court has held that in the case of the manufacturer and the professional there is liability.

*Id.* 393 N.W.2d at 485, n. 5.

American Home also cites *Pacific Employers Ins. Co. v. United General Ins. Co.*, 664 F.Supp. 1022 (W.D.La.1987). In *Pacific Employers*, the court, sitting in diversity, predicted in a single paragraph how Louisiana courts would resolve the direct duty issue, cryptically concluding that there is "no plausible argument in support of a woefully lacking duty risk-relationship between the [primary and excess] insurers which would have to exist to form a basis for tort recovery." *Id.* at 1024. This court believes that the Illinois Supreme Court would not be persuaded by *Pacific Employers* because that court's holding is conclusory and unsupported by public policy rationales.

American Home also cites *Commercial Union Assurance Co. v. Safeway Stores, Inc.*, 26 Cal.3d 912, 164 Cal.Rptr. 709, 610 P.2d 1038 (1980). In that case, the court held that a corporation which is self-insured up to a certain level below the inception of excess coverage does not owe a duty to its excess carrier to accept a settlement offer which would avoid exposing the excess insurer to liability. This court fails to see how *Safeway Stores* helps American Home here. The case is factually inapposite because the dispute therein did not involve an independent primary carrier.

This court believes that the recent case of *Ranger Ins. Co. v. Home Indemnity Co.*, 714 F.Supp. 956 (N.D.Ill.1989) (Aspen, J.) articulates the relevant policies which support the imposition of a direct duty on a primary carrier owed to a known excess carrier while negotiating the settlement of claims against their insured.

*Ranger* was a diversity case in which Illinois law was applicable. After noting that the theory of equitable subrogation did not apply to the facts of the case before it, the *Ranger* court observed that "[c]ourts across the country are increasingly amenable to recognizing that a primary carrier owes a direct duty to an excess carrier," citing cases from New York, Michigan, New Jersey, and the Southern District of West Virginia. *Ranger* at 961. Turning to Illinois tort law, the *Ranger* court noted that Illinois law will impose a duty of care when: (1) the alleged tortfeasor could reasonably have foreseen that his conduct would injure the plaintiff, and (2) policy considerations justify placing the risks and the burden of care on the alleged tortfeasor. *Id.* (*citing Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill.2d 507, 526, 111 Ill.Dec. 944, 953, 513 N.E.2d 387, 396 (1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988)). As discussed below, both of these considerations indicate that, if faced with the precise issue raised in the cases at bar, the Illinois Supreme Court would impose a duty of care on American Home.

A primary liability carrier who knows of the existence of excess liability carriers knows that a judgment against the insured in excess of the primary policy limit will harm the excess carriers. Furthermore, it is very reasonably foreseeable to a primary carrier that its unreasonable refusal to settle a claim against the insured within its policy limit could result in a judgment in excess of its policy limit. Thus, it is reasonably foreseeable that a primary carrier's unreasonable refusal to settle a claim against the insured may injure excess carriers of whose existence the primary carrier is aware during the settlement negotiations.

As noted by the *Ranger* court, there are numerous policy reasons for imposing a direct duty of care on a primary insurer in favor of an excess insurer. These policies include:

> encourag[ing] ... settlements when an offer exists at or near the policy limits, discouraging gambling with the excess carrier's money, hoping to keep excess liability insurance premiums low, reducing the necessity for the excess carrier to participate in the defense of the action to protect its rights, and reflecting the duties of the primary carrier to perform the duty which it has delegated to itself, that is, providing primary coverage.

*Id.* at 961 (*citing* R. Long, *The Law of Liability Insurance*, § 5.63 at 5–472 (1980)). Furthermore, imposing this duty on a primary liability carrier in favor of an excess liability carrier will place no additional burden on a primary carrier since a primary carrier indisputably owes an identical duty to its insured if there is no excess coverage applicable to a particular claim against the insured.

On the other hand, there are no policy reasons why a primary carrier who knows of an excess carrier's existence should not be held to a direct duty to settle a claim against the insured within its policy limit when a reasonable primary insurer would do so. The imposition of such a duty only restricts the primary carrier from gambling with the excess carrier's money.

This court believes that if the Illinois Supreme Court were faced with the issue, it would adopt the reasoning of the *Ranger* court and hold that a primary carrier does owe a direct duty of care to an excess carrier while conducting settlement negotiations of claims against the insured when it knows of the excess carrier's existence at the time of the negotiations.

American Home's next argument is that even if "a duty does exist [between primary and excess insurers], it is not of a fiduciary nature as alleged by [United and American Centennial]". United and American Centennial both label the second count of their respective complaints as "Breach of Fiduciary Duty". In paragraph thirty of its complaint, United alleges that "American Home as the primary insurance carrier, breached its fiduciary duty to its excess carrier United, by *negligently* failing to settle the matter within the American Home policy limit when it had the opportunity to do so ..." (Emphasis added). Paragraph thirty-three of American Centenni-

al's complaint alleges that "American Home had fiduciary duties to its insured, Continental/Parmelee, and to its excess carrier, American Centennial, and it breached these fiduciary duties by *carelessly and negligently* failing to settle the matter within its policy limit ..." (Emphasis added).

The factual allegations in both complaints focus on the reasonableness of American Home's various decisions not to settle Dr. Bright–Asare's lawsuit against Continental/Parmelee. The breach and causation allegations contain terms such as "[American Home's] negligent conduct", "reasonable insurer", "negligently failing to settle", and "reasonable, prudent, and non-negligent manner" (United Complaint); and "carelessly and negligently", "reasonable and prudent evaluation of the facts", and "reasonable, prudent, and non-negligent manner" (American Centennial Complaint). Nowhere in either complaint is there an allegation that American Home owed the excess carriers any kind of loyalty which is the essence of a fiduciary duty. Under these circumstances, this court finds that United's and American Centennial's use of the word "fiduciary" in the captions of count two and in paragraphs thirty and thirty-three (respectively) of their complaints, are merely careless mischaracterizations of the reasonableness-based duty of care which they allege American Home owed them. The complaints simply do not seek to recover from American Home for breach of a loyalty-based fiduciary duty. If this finding does not accurately reflect the intentions of United and American Centennial, they will have 30 days from the date hereof to amend their complaints accordingly.[2]

## PREEMPTION

█ In case No. 89 C 2489, although curiously not in No. 89 C 3139, American Home argues that the cause of action alleged therein is preempted by Ill.Rev.Stat. ch. 73, para. 767 (1988). Paragraph 767 states in relevant part:

In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed [$25,-000].

American Home cites *Strader v. Union Hall Inc.*, 486 F.Supp. 159 (N.D.Ill.1980) and *Aabye v. Security–Connecticut Life Ins. Co.*, 586 F.Supp. 5 (N.D.Ill.1984) for the proposition that § 767 preempts the common law tort of "breach of duty of good faith and fair dealing." However, these cases are factually distinguishable. *Strader* involved a claim by an insured's employee against the insured's health insurer and *Aabye* involved a claim by an insured against its insurer. No Illinois court has decided the issue of whether a claim by a third party against an insurer for bad faith refusal to settle a claim against the insured is preempted by § 767. Thus, this court is again presented with an unsettled question of state law and must resolve it as it thinks the Illinois Supreme Court would resolve it. *Strader, supra,* at 161, *citing Eckenrode, supra,* at 3.

The purpose of § 767 is "to place the *insured* in as good a position as he would have been had the insurer paid the value of the claim when requested." *Watson v. State Farm Fire & Casualty Co.*, 122 Ill. App.3d 559, 565, 77 Ill.Dec. 670, 674, 461 N.E.2d 57, 61 (3d Dist.1984) (emphasis added). As *Watson* illustrates, § 767 is meant to protect insureds, not excess carriers. Thus, § 767 should not preempt a claim by an excess insurer against a primary insurer for breach of the duty of care which a primary carrier owes to an excess carrier. *Accord, National Union Fire Ins. Co. v. Continental Illinois Corp.*, 673 F.Supp. 267, 270–272 (N.D.Ill.1987) (Shadur, J.) (holding that § 767 preempts a bad faith

---

**2.** In light of this finding, this court need not determine at this time whether, under Illinois

law, a primary carrier's duty towards an excess carrier is "of a fiduciary nature."

**1234**

claim against an insurer arising from an underlying claim *by* the insured but does not preempt a bad faith claim against an insurer arising from an underlying claim *against* the insured).

## VICARIOUS LIABILITY

In case No. 89 C 3139, American Home claims that American Centennial's complaint attempts to impose on American Home vicarious liability for Epton, Mullin's alleged malpractice. American Home then argues that, under Illinois law, an attorney appointed by an insurer to defend its insured is not the insurer's agent and therefore the attorney's malpractice cannot be imputed to the insurer.

Paragraph twenty-eight of American Centennial's complaint alleges that "*American Home* and its agents, Epton, Mullin & Druth, Ltd., were aware of [certain facts concerning the strength of Dr. Bright–Asare's case against Continental/Parmelee]." (Emphasis added). This sentence is the basis of American Home's vicarious liability argument. However, paragraph twenty-eight alleges *actual* knowledge of the facts summarized therein by American Home. That paragraph twenty-eight also alleges actual knowledge by Epton, Mullin does not change the fact that American Centennial does not seek to *impute* this knowledge to American Home. Rather, American Centennial alleges that American Home and Epton, Mullin both had *actual* knowledge of the alleged facts. Simply put, American Centennial's characterization of Epton, Mullin as American Home's agent is not an attempt to impute Epton, Mullin's knowledge to American Home.[3]

## CONCLUSION

American Home owed a direct duty of care to United and American Centennial while negotiating a possible settlement of Dr. Bright–Asare's lawsuit against Continental/Parmelee. This duty required American Home to accept a settlement offer within its policy limit if a reasonable primary carrier with knowledge of the ex-

istence of excess carriers would have done so. The facts alleged by United and American Centennial clearly state a claim for breach of this duty.

Neither complaint alleges that American Home owed a loyalty-based fiduciary duty to United and American Centennial, but rather contain a few gratuitous mislabelings of the reasonableness-based duty of care which is alleged. If this conclusion does not reflect United's and American Centennial's intentions, they will have thirty days from the date hereof to file amended complaints.

United's complaint is not preempted by Ill.Rev.Stat. ch. 73, para. 767. American Centennial's complaint does not attempt to impose vicarious liability on American Home.

Accordingly, American Home's motions to dismiss the complaints are denied.

---

**3.** Accordingly, this court need not address American Home's contention that, under Illi-

nois law, an insurer-appointed attorney is not the agent of the appointing insurer.