**Robert SILIGATO, Plaintiff**

v.

**William WELCH and Richard Welch, Defendants and Third-Party Plaintiffs**

v.

**ALLSTATE INSURANCE COMPANY, Third-Party Defendant**

**No. Civil N–82–421 (PCD).**

United States District Court, D. Connecticut.

May 3, 1985.

Howard Jacobs, Karen F. Tross, Jacobs, Grudberg & Belt, New Haven, Conn., for plaintiff.

Joseph Chiarelli, Hamden, Conn., for defendants and third-party plaintiffs.

James O'Connor Shea, Branford, Conn., for third-party defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

*Background*

Originating in a state court negligence action brought by Robert Siligato (Siligato), against William Welch and Richard Welch (Welches), this third-party action was removed to this court, pursuant to 28 U.S.C. § 1441, by third-party defendant Allstate Insurance Company (Allstate), invoking diversity jurisdiction. The Welches seek a declaratory judgment that Allstate's refusal to defend and indemnify them in the state court action breached Allstate's duties under a policy of liability insurance. Allstate has moved for summary judgment, Rule 56, Fed.R.Civ.P., on the ground that the complaint fails to allege facts covered by the policy of insurance. For the reasons set forth below, the motion is denied as to William Welch but granted as to Richard Welch.

*Facts*

On September 21, 1980, William Welch, while operating a vehicle owned by his brother, Richard Welch, with Richard's permission, was involved in an accident in which Robert Siligato was injured.

Primary liability insurance of $300,000 was provided for Richard's vehicle, and William as the permissive operator, by Metropolitan Property & Liability Insurance Company (Metropolitan).

At the time of the accident, William Welch resided, as he had for forty-two years, with his mother, Mary Alice Welch, in Hamden, Connecticut. Allstate provided liability coverage, in the amount of $100,000, in relation to Mary Alice's vehicle including all residents of her household driving with the permission of the owner (Exhibit A) either her vehicle (the insured vehicle) or other "non-owned" [1] vehicles "not

---

1. The parties have each submitted what they claim to be copies of the relevant Allstate liability policy. However, these exhibits differ in their definitions of "non-owned automobile." The policy submitted by the Welches defines "non-owned automobile" as: "A non-owned auto used by you or a resident relative with the permission of the owner. This auto must not be available or furnished for the regular use of a person insured." Welch Exhibit at 6. The policy submitted by Allstate defines "non-owned automobile" as: "An automobile, ... not owned

furnished for the regular use of a person insured." It is not disputed but that any coverage provided by Allstate would be secondary to Metropolitan's coverage.

Siligato's original complaint describes Richard's car as a family car then being used by William within the scope of his general authority. Claiming that Richard was a resident of his mother's household, Allstate has refused to defend or indemnify on grounds that the complaint does not allege facts within the policy's "non-owned" automobile coverage.[2]

The Welches argue that though he visited his mother frequently and occasionally spent the night in her home, Richard actually lived in Cheshire, Connecticut, Richard's vehicle, to which only he had keys, was rarely used by others, and he disliked others using his car and did not always permit William to use it.

On February 27, 1984, Siligato filed an amended complaint in which the Welch vehicle was described as driven by William within his general authority. In July of 1982, the primary insurer (Metropolitan) and the Welches, without participation by Allstate, agreed with Siligato that he was to be paid certain amounts. On August 9, 1982, Siligato released Metropolitan from any further liability and agreed not to satisfy any future settlement or judgment out of the personal assets of the Welches. Siligato reserved the right to collect any judgment or settlement from Allstate.

*Claims*

William Welch claims coverage by Allstate as a relative of Mary Alice, resident in her home and operating a "non-owned" vehicle with the permission of its owner.

Richard cannot claim coverage by Allstate as he does not claim to be a resident in Mary Alice's house and if he were his car would not be a non-owned vehicle.[3]

Allstate claims that William is not covered by its policy:

(1) Because Richard was a resident in Mary Alice's house and thus was an insured under her policy, from which it follows that his car, being owned by an insured, was not a covered "non-owned" vehicle.

(2) Because if Richard were not a resident of Mary Alice's house, his vehicle was nonetheless regularly furnished to William for his use so as to preclude its being a covered "non-owned" vehicle.

*Discussion:*

Summary judgment cannot be granted if there is a "genuine issue as to any material fact." Rule 56(c), Fed.R.Civ.P. *See Schwabenbauer v. Board of Educ.*, 667 F.2d 305, 313 (2d Cir.1981). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *American Int'l Group v. London American Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981), quoting *Heyman v. Commerce & Indust. Ins.*, 524 F.2d 1317, 1319–20 (2d Cir.1975). Moreover, there may be no dispute as to any inferences which might be drawn from the record creative of an issue of material fact. *Phoenix Savings & Loan v. Aetna Cas. & Sur.*, 381 F.2d 245, 249 (4th Cir.1967). In determining whether or not there is a genuine factual issue, the court must "resolve all ambiguities and draw all reasonable inferences against the moving party." *Schwabenbauer*, 667 F.2d at 313; *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (*per curiam*); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).

---

by, or furnished or available for the regular use of, the named insured or any resident of his household other than a temporary substitute automobile, provided the use thereof is with the permission of the owner." Exhibit A at 2.

**2.** The two policies use different language to define resident, but with the same meaning. "Resident ... means ... bodily presence in [the

named insured's] household [with] an intention to continue to dwell therein ...." Exhibit H at 2.

**3.** As the Welches' memorandum does not argue Richard's claim to coverage, the motion as to him is granted.

*Duty to Defend*

Allstate has two basic obligations to an insured: (1) to defend; and (2) to indemnify. If the complaint in Siligato's action sets forth facts appearing to bring the injury within Allstate's coverage, *Missionaries of the Company of Mary v. Aetna Cas. & Sur.*, 155 Conn. 104, 110, 230 A.2d 21 (1967), then it is obligated at least to defend William Welch. *Smedley Co. v. Employers Mut. Liab. Ins.*, 143 Conn. 510, 123 A.2d 755 (1956).

■ The original complaint alleged that Richard Welch's automobile was a family car and it was then being operated by William within his general authority to do so. As a substituted complaint has been filed, Allstate's duty to defend is determined by the allegations therein and thus it is not necessary to decide whether Allstate was obligated to defend under the original allegations. The substitute complaint supersedes and controls an insurer's obligations. *Sussman v. American Sur.*, 345 F.2d 679 (5th Cir.1965); *Salvatierra v. National Indem.*, 133 Ariz. 16, 648 P.2d 131 (Ariz.App.1982).

■ The substituted complaint of July 30, 1984, merely alleges Richard's ownership of the vehicle and its operation by William, Richard's brother, within William's general authority. Under these allegations, William, as a resident of the house of Allstate's insured, was driving a car owned by other than the insured or a resident of the insured's premises, and with the permission of the owner. William would then be a resident operating a "non-owned" vehicle, and not within an exclusion. Thus, Allstate on those allegations would be obliged to defend William. *Missionaries of Mary*, 155 Conn. 104, 230 A.2d 21. Of course, Allstate's obligations would not arise on the basis of the amended complaint (disregarding any prior obligation, if any) until it was notified of the amended complaint. *Sussman* at 680; *Salvatierra* 648 P.2d at 134. While an inference of more than isolated use by William might be drawn from the allegation of his general authority, that is no basis to infer any particular amount of use and certainly no basis to infer, necessarily that the vehicle was furnished to William for his regular use.

■ As Richard's residence presents an issue of fact, as does the regularity with which his car was furnished to William, Allstate is not entitled to summary judgment. The excess carrier's duty to defend is secondary to the duty of the primary insurer, but it is no less real a duty. *See Allstate Ins. v. Riverside Ins.*, 509 F.Supp. 43 (E.D.Mich.1981). Due to the distinction between coverage and liability, an insurer's duty to defend the insured is independent of and broader than its duty to indemnify. *Smedley Co.*, 143 Conn. at 516, 123 A.2d 755; *Missionaries of Mary*, 155 Conn. at 110, 230 A.2d 21. Metropolitan's settlement with Siligato may have discharged its duty to indemnify, and its concomitant duty to settle, but it did not terminate its duty to defend its insured to the conclusion of the claims which are within the coverage. *Allstate Ins. v. Riverside Ins.* at 48. The settlement may have escalated the immediacy and the degree of Allstate's participation in its insured's defense. In any default of the primary carrier's defense of their two insurers' joint insured, Allstate may be obliged to assume up to the total defense of the insured subject to its right to be indemnified by the primary insurer for its expenses incurred by the excess insurer in discharging the primary insurer's duty to defend. *Id.*

*Duty to Indemnify*

■ Allstate claims that the settlement agreement fully satisfied the injured party's damages, since he settled for less than the $300,000 primary policy limit and excused the insured of any personal liability. Contrary to Allstate's claim, Siligato has not released his claim against the Welches. An agreement not to satisfy a judgment out of their personal asserts is no bar to his recovery of a judgment for his damages, with a set off for the amounts he has or

has agreed to receive. An injured claimant who obtains a judgment may satisfy it against the defendants property, i.e. personally, or by subrogating his claim against the defendants' insurer. Conn.Gen.Stat. § 38–175. The waiver of the right to satisfaction personally from a defendant is not a waiver of the right under the statute against the insurer.

 An insurer remains liable for damages within its coverage until its insured's legal liability is discharged. An excess insurer, such as Allstate, remains similarly liable, except that its duty to indemnify is invocable only after the primary coverage, here $300,000, is exhausted. Siligato's reservation of his rights against the excess insurer precludes Allstate from claiming the benefit of a settlement agreement to which it was not a party and which did not and was not intended to terminate its obligation. *See Deblon v. Beaton,* 103 N.J.Super. 345, 247 A.2d 172 (1968); *Allstate Ins. v. Riverside Ins.*

Allstate's indemnity liability would only arise if and to the extent that Siligato's damages are determined to be more than $300,000, *Pecker v. Aetna Cas. & Sur.,* 171 Conn. 443, 453, 370 A.2d 1006 (1976); *see also, Deblon,* 247 A.2d at 175; *Allstate Ins. v. Riverside Ins.* at 46, and William is found to be Allstate's insured. Allstate's liability cannot be increased by the fact, if true, that the present value of Metropolitan's settlement agreement did not equal its $300,000 coverage.

A primary insurer is permitted, and should be encouraged, to settle a claim in discharge of its duties without being impeded or prejudicing the excess insurer, which is left in the same position after a settlement by the primary insurer as before. *Deblon* 247 A.2d at 176; *Allstate Ins. v. Riverside Ins.* at 46. "As insurance is intended as indemnification for loss, amounts received by an insured in satisfaction, or partial satisfaction of his loss will be applied in full or partial discharge of his insurer's liability." *Pecker* 171 Conn. at 452, 370 A.2d 1006; *see also,* 46 C.J.S., Insurance, § 1206. Though Allstate may

dispute any duty to indemnify, its failure to defend in the face of allegations obliging it to do so may cost it the right to contest its duty to indemnify. *Missionaries of Mary,* 155 Conn. at 114, 230 A.2d 21.

As noted above, documents submitted by the Welches and Allstate show differing definitions of what constitutes "non-owned" automobile in Allstate's liability policy. It is for the trier of fact to decide the question of whether (1) Richard was a resident of his mother's household; or (2) whether the car was furnished or provided on a regular basis. *Young v. American Fidelity Ins.,* 2 Conn.App. 282, 289, 479 A.2d 244 (1984); *Hollander v. Nationwide Mut. Ins.,* 60 A.D.2d 380, 401 N.Y.S.2d 336, 338, *appeal denied,* 44 N.Y.2d 646, 406 N.Y.S.2d 1026, 378 N.E.2d 127 (1978). As exceptions to Allstate's coverage, the burden of proving facts on which its policy exclusions would apply is on Allstate. *Young* 2 Conn.App. at 286, 479 A.2d 244.

As issues of fact exist and because Allstate's duty to defend and to indemnify, as discussed above, cannot as a matter of law be precluded, Allstate's motion is denied.

SO ORDERED.