768 N.E.2d 288 (2002)
329 Ill. App.3d 987
263 Ill.Dec. 528
U.S. FIRE INSURANCE COMPANY, a New York corporation, Plaintiff-Appellant,
v.
ZURICH INSURANCE COMPANY, an Illinois corporation, Defendant-Appellee.
No. 1-00-3849.
Appellate Court of Illinois, First District, Fifth Division.
March 29, 2002.
*289 Stark, Reagan & Finnerty, P.C., Troy, MI (Michael H. Whiting, of counsel); and Hinshaw & Culbertson, Lisle (Donald A. O'Brien, of counsel), for Appellant.
Williams Montgomery & John Ltd., Chicago (Christine D. Ketcham, Barry L. Kroll, David E. Morgans and Lloyd E. Williams, Jr., of counsel), for Appellee.
Presiding Justice CAMPBELL delivered the opinion of the court:
This appeal involves an action for declaratory judgment filed by one insurance company against another for costs incurred in connection with the defense of a lawsuit. Plaintiff, U.S. Fire Insurance Company (U.S.Fire), appeals from: (1) an order of the circuit court of Cook County granting summary judgment on count I of U.S. Fire's second amended complaint in favor of defendant, Zurich Insurance Company (Zurich); and (2) from an order dismissing counts II through IV of U.S. *290 Fire's second amended complaint. For the following reasons, we affirm the judgment of the trial court.
U.S. Fire filed an action for declaratory judgment against Zurich for claims arising out of a civil action known as Eastbank Ltd. Partnership v. Laticrete International (Eastbank), formerly pending in the circuit court for Kent County, Michigan. At the time of the Eastbank litigation, Laticrete International (Laticrete) was insured under a Zurich primary policy and under a U.S. Fire excess policy. U.S. Fire sought to recover (a) defense costs it incurred defending a portion of the Eastbank action (count I) and (b) monies U.S. Fire allegedly paid to settle the Eastbank action (counts II through IV).

I. CHRONOLOGY
The following chronology of events is provided as an introduction to the facts as revealed in the record:
1989 Construction commenced on high rise building in Grand Rapids, Michigan.
1991 Spring 1991: Construction completed on building. Serious leakage begins; entire building recaulked.
1992 Exterior wall of building appears damaged.
November 16, 1992: Zurich assumes Laticrete's defense.
December 1992: Panel fabricator sues general contractor; Eastbank brings action against building contractors.
1993 25 parties involved in litigation in Wisconsin and Michigan.
June 1993: Zurich notifies U.S. Fire of existence of Eastbank lawsuit.
July 1993: Zurich's internal liability report estimates potential verdict against Laticrete between $18 million and $30 million.
1994 Trial court suspends discovery and orders mediation.
November 22, 1994: Zurich advises U.S. Fire by letter that mediation begins on February 6, 1995, and that Zurich will review mediation briefs.
1995 February 1995: Endispute mediation begins. At mediation conference, Zurich offers $250,000 toward settlement. Mediator advises Zurich that its required contribution is in the "mid-millions." Eastbank settles with all defendants except Laticrete. Building owner implements remedial construction (completed in 1997).
1999 June 23, 1999: Zurich completes defense of Laticrete upon entering into a settlement and limited release. Zurich pays Eastbank $956,648.11 and Laticrete pays Eastbank $6,043,351,-89.
July 1, 1999: Zurich advises U.S. Fire that it has withdrawn from Eastbank case.
August 1999: U.S. Fire assumes Laticrete's defense and files one-count complaint against Zurich.
September 2, 1999: Laticrete settles with Eastbank. Amount paid by U.S. Fire exceeded limits of excess policy.
2000 May 19, 2000: U.S. Fire files second amended complaint.
August 23, 2000: Hearing on Zurich's motion for summary judgment on count I.
September 8, 2000: Trial court grants Zurich's motion for summary judgment.
October 6, 2000: Hearing on Zurich's motion to dismiss counts II through IV.
October 13, 2000: Trial court dismisses counts II through IV.
November 9, 2000: U.S. Fire files notice of appeal.

*291 II. BACKGROUND
The record reveals the following relevant facts. In 1989, a private limited partnership known as Eastbank Limited Partners (Eastbank) commenced construction of the largest building in Grand Rapids, Michigan. The 33 story mixed-use residential high-rise included a hotel, rental apartments and condominiums and was completed in 1991.
The building began to experience serious leakage at the moment of occupancy, manifested by interior walls and floors becoming soaked after rainstorms. In 1991, the entire building was recaulked between panel and window joints. Nevertheless, leaking continued. Further examination of interior surfaces revealed serious defects in the cementitious backer board panels which comprised the exterior curtain of the building. The backer boards and their waterproofing membrane and adhesive mortar covering were supplied by Laticrete.
In December 1992, Eastbank brought an action against the building contractors including Laticrete. Laticrete sued the general contractor and owner for nonpayment. By 1993, many related claims were pending in both Wisconsin and Michigan.
Laticrete was insured under a Zurich primary policy containing an aggregate limit of $1 million, and a U.S. Fire excess (umbrella) policy containing an aggregate limit of $10 million, in excess of Zurich's policy. As the primary insurer, Zurich undertook Laticrete's defense in the Eastbank action and notified U.S. Fire of the action in June 1993.
Zurich's policy states that its duty to defend ended "when we [Zurich] had used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C." U.S. Fire's excess policy states that its duty to defend was triggered when the applicable limits of the underlying insurance had "been exhausted by payments."
By mid-1994, 25 parties, including Laticrete, were involved in the Eastbank action and the trial court suspended discovery to allow all parties to participate in mediation. In preparation for mediation, the parties submitted summaries which described the nature and extent of their alleged claims and defenses. Zurich advised U.S. Fire that it was reviewing the summaries in order to prepare an evaluation of the case and offered U.S. Fire the opportunity to view the summaries and any other documents at Zurich's offices. Eastbank's mediation summary claimed damages in excess of $39 million and identified Laticrete as one of the primary defendants.
Zurich undertook Laticrete's defense in the Eastbank action subject to a reservation of rights. Zurich advised U.S. Fire that the curtain wall problems were resolved, that the curtain wall problems were attributable to other codefendants, and that Laticrete's true exposure was within Zurich's policy limit. Zurich specifically informed U.S. Fire that it continued to view the Eastbank action as a case of "no liability" and that it would offer no more than $250,000 at the mediation. U.S. Fire alleged that at this point in time Zurich should have realized, and did realize, that Laticrete's exposure would exceed Zurich's primary policy limits based on documents in Zurich's possession. Prior to the mediation, Zurich advised U.S. Fire that its (U.S.Fire's) presence at the mediation was unnecessary.
At the mediation, in compliance with its reports to U.S. Fire, Zurich offered to contribute $250,000 toward a global settlement of the Eastbank action. However, the mediator advised Zurich that its offer *292 was inadequate and the mediator suggested that an offer in the "mid-millions" would be more appropriate. Zurich declined to increase its offer at that point, and the mediator ordered Zurich to withdraw from the mediation. Subsequently, Eastbank entered into a settlement with all defendants except Laticrete for $8,500,000; individual defendant contributions ranged between $1,500,000 and $4 million.
Laticrete, Zurich and Eastbank began settlement negotiations in June 1999. During the negotiations, Zurich postponed the performance of certain expert witness services (tests) which were recommended by defense counsel for Laticrete. Defense counsel for Laticrete also notified Zurich that the tests could potentially damage the defense of Laticrete and that "substitute evidence" potentially existed. On June 23, 1999, Laticrete and Zurich settled with Eastbank. Under this settlement, Laticrete paid Eastbank $6,043,351.89 and Zurich paid Eastbank $956,648.11, the remaining aggregate limit at the time, in exchange for a covenant not to enforce any judgment Eastbank obtained in Eastbank's action against the assets of Laticrete or Zurich. As part of this settlement, Laticrete executed a limited release in favor of Zurich. After Zurich exhausted its policy limits through the settlement, U.S. Fire assumed the defense of the Eastbank action, which was scheduled for trial in September 1999. U.S. Fire settled the Eastbank action prior to trial.
On September 2, 1999, U.S. Fire and Eastbank reached an agreement extinguishing Eastbank's remaining claims. The amount paid by U.S. Fire to extinguish Eastbank's claims exceeded the limits of U.S. Fire's excess policy
Meanwhile, on August 5, 1999, U.S. Fire filed its complaint for declaratory judgment against Zurich in one count, seeking recovery of U.S. Fire's defense costs incurred following Zurich's withdrawal in June of 1999. On January 14, 2000, U.S. Fire filed a first amended complaint, realleging count I of the original complaint and adding count II, seeking recovery of settlement monies paid by U.S. Fire in the Eastbank litigation based on Zurich's direct duty to U.S. Fire according to the case Schal Bovis, Inc. v. Casualty Insurance Co., 315 Ill.App.3d 353, 732 N.E.2d 1179 (1999). The trial court granted U.S. Fire's motion to compel discovery as to count I of the first amended complaint and stayed discovery on the issues raised in count II.
On February 14, 2000, Zurich filed a motion to dismiss count II of the first amended complaint. On March 23, 2000, Zurich filed a motion for summary judgment on count I of the first amended complaint.
On May 19, 2000, U.S. Fire filed its second amended complaint, in four counts. In count I, U.S. Fire sought to recover attorney fees and expenses incurred by U.S. Fire in its defense of the Eastbank action, and added a claim that Zurich improperly shifted costs to U.S. Fire by postponing necessary defense preparations and testing by Laticrete's liability experts in order to save costs while negotiating with Eastbank for its withdrawal from the case. In count II, U.S. Fire alleged that Zurich owed it direct common-law and fiduciary duties "in the conduct of the defense and settlement negotiations" for the Eastbank action. Count III stated a cause of action for the same relief as in count II, but based upon U.S. Fire's standing as an equitable and contractual subrogee for Laticrete, alleging that by virtue of its settlement of the Eastbank action, U.S. Fire was subrogated to the duties that Zurich owed Laticrete "in the conduct of the defense and settlement negotiations." Count *293 IV stated a claim against Zurich for negligent performance of common law duties "in performing its review and evaluation" of the Eastbank action and informing U.S. Fire of its findings relevant to the mediation process. In counts II through IV, U.S. Fire pleaded that Zurich's conduct denied U.S. Fire the opportunity to settle the Eastbank action during the mediation for an amount less than the limits of the excess policy.
On May 24, 2000, Zurich renewed its motion seeking summary judgment on U.S. Fire's claim for defense costs. On June 16, 2000, Zurich filed a motion to dismiss counts II through IV pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 1998)) arguing that the counts were insufficient to state a factual or legal claim to recovery.
On June 19, 2000, U.S. Fire filed a motion to vacate the discovery stay pertinent to the issues raised in count II of the first amended complaint, which were now raised in counts II through IV of the second amended complaint. On June 28, 2000, following a hearing, the trial court denied U.S. Fire's motion to vacate the stay of discovery.
A hearing commenced on Zurich's motion for summary judgment on August 23, 2000. On September 8, 2000, the trial court granted summary judgment in favor of Zurich on count I of U.S. Fire's second amended complaint. On October 13, 2000, after hearing arguments on Zurich's motion to dismiss counts II through IV of the second amended complaint, the trial court granted Zurich's motion.
U.S. Fire filed its timely notice of appeal of the following orders of the trial court on November 9, 2000:(1) the September 8, 2000, order granting summary judgment in favor of Zurich; (2) the order of October 13, 2000, dismissing counts II through IV of the second amended complaint; (3) the January 14, 2000, order staying discovery; and (4) the June 30, 2000, order denying U.S. Fire's motion to vacate the stay of discovery.

III. CHOICE OF LAW
Initially, U.S. Fire argues that this court need not engage in conflicts of law analysis and that the choice of law should not affect the outcome of either of Zurich's motions.
Absent an express choice of law, insurance policy provisions are generally "`governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract.'" Lapham-Hickey Steel Corp. v. Protection Mut. Insurance. Co., 166 Ill.2d 520, 211 Ill.Dec. 459, 655 N.E.2d 842 (1995), quoting Hofeld v. Nationwide Life Insurance Co., 59 Ill.2d 522, 528, 322 N.E.2d 454 (1975). This court has specifically held that an insurance policy is governed by the law of the state where the policy was issued or delivered or by the law of the place of the last act to give rise to a valid contract: United States Fire Insurance Co. v. CNA Insurance Cos., 213 Ill.App.3d 568, 575, 157 Ill.Dec. 660, 572 N.E.2d 1124 (1991), and Jadczak v. Modern Service Insurance Co., 151 Ill.App.3d 589, 593, 104 Ill.Dec. 932, 503 N.E.2d 794 (1987).
U.S. Fire lists four possible states as possible choices of law in the disposition of this matter:
(1) Illinois. Illinois is the domicile of defendant Zurich, the primary insurer, the location of the formation and issuance of Zurich's primary policy, the situs of Zurich's actions and decisions relevant to the dispute, and the forum of the present litigation;
*294 (2) Connecticut. Laticrete is domiciled in Connecticut and is the place where performance of the Zurich and U.S. Fire policies would occur;
(3) New York. New York is the domicile of U.S. Fire, the location of the formation and issuance of its excess policy, and the situs of U.S. Fire's material actions and decisions pertaining to the present action; or
(4) Michigan. Michigan is the situs of the construction project and the forum of the underlying litigation.
U.S. Fire explains that all four states support U.S. Fire's claim to recover its defense costs and fees, as alleged in count I, and that Illinois, New York and Michigan recognize the right of an excess insurer to bring a direct action against a primary insurer for negligent defense or settlement of an underlying action, as alleged in counts II through IV. U.S. Fire states that Connecticut has no reported cases dealing with the direct action issue, and therefore Illinois law controls.
Zurich agrees that this court need not engage in a conflicts of law analysis, but first responds that New York law is not an appropriate forum for this action. Zurich explains that neither the second amended complaint nor any of its predecessors allege either that the excess insurance policy was formed and issued in New York or that all of U.S. Fire's material actions and decisions were made in new York. Zurich states that the record shows that some decisions transpired through U.S. Fire's office in New Jersey and that some decisions pertaining to the formation of U.S. Fire policy occurred in Massachusetts and Connecticut. Zurich argues that this court should not give any credence to assertions not incorporated into the pleadings in ruling on a section 2-15 motion. 735 ILCS 5/2-615 (West 1998); In re Chicago Flood Litigation, 176 Ill.2d 179, 206, 223 Ill.Dec. 532, 680 N.E.2d 265 (1997).
Zurich further asserts that New York law is also inapplicable because count I concerns Zurich's and U.S. Fire's duty to defend a Connecticut insured in a Michigan lawsuit, and counts II through IV concern duties allegedly owed by Zurich to U.S. Fire, which were allegedly triggered by Zurich's contract with a Connecticut insured regarding a Michigan lawsuit.
Zurich also dismisses Illinois as an appropriate forum for the substantive issues raised in the complaint. Zurich maintains that the notwithstanding the facts that Illinois is Zurich's principal place of business and that U.S. Fire is authorized to conduct business in Illinois, Illinois law neither governs Zurich's duties to a Connecticut insured nor alleges duties to an excess insurer arising out of a Michigan lawsuit.
Zurich urges this court to apply Connecticut law, as Connecticut in fact rendered a decision regarding what duties, if any a primary insurer owes an excess insurer. See, e.g. Infinity Insurance Co. v. Worcester Insurance. Co., No. CV000597436, 2000 WL 1890126 (Conn.Super. December 4, 2000):
"There is no Connecticut authority directly on point supporting the plaintiff's position that a direct duty exists between a primary and an excess insurer.
* * *
"Connecticut recognizes a cause of action based upon equitable subrogation. * * * Equitable subrogation `is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.' " Infinity Insurance, slip op. at 2. *295 Zurich alternatively argues that this court should use the law of either Connecticut or Michigan as the forum of the underlying action.
U.S. Fire replies that neither the Zurich nor the U.S. Fire policy contains a choice of law provision and notes that Zurich relied heavily on Illinois law in support of its arguments for dismissal. The pleadings allege that U.S. Fire is incorporated and has its principal place of business in New York and that New York is the location where U.S. Fire's excess policy was issued and countersigned. Based on the criteria set forth in Lapham-Hickey, U.S. Fire argues that either Illinois or New York law appropriately governs this case.
U.S. Fire further replies that Michigan meets none of the criteria of Lapham-Hickey and is an inappropriate forum for the case. U.S. Fire argues that Michigan's only nexus with the present case is the underlying litigation and that Michigan has no significant contacts or interest in the outcome of this case. The Michigan case has been settled and dismissed. The Zurich and U.S. Fire policies both provided liability coverage to Laticrete wherever its operations were conducted throughout the United States.
It is clear that the parties would elect different state laws to apply based on which state endorses a primary insurer's direct duty to an excess insurer with regard to settlement of an underlying action. Notwithstanding the parties' arguments, the record shows that neither party explicitly attempted to secure a ruling from the trial court determining the choice of law and that the trial court made no such determination. There is nothing in the record to suggest that the trial court entered its orders in this matter based on anything other than Illinois law. We therefore decide the issues raised on appeal based on applicable Illinois law and make no determination regarding the choice of law.

IV. SUMMARY JUDGMENT
U.S. Fire contends that the trial court erred in granting summary judgment in favor of Zurich on count I of U.S. Fire's second amended complaint. U.S. Fire argues that a genuine issue of material fact exists as to whether Zurich actually fulfilled its duty to defend in settling the Eastbank case.
Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party's right is clear and free from doubt. In re Estate of Hoover, 155 Ill.2d 402, 410, 185 Ill.Dec. 866, 615 N.E.2d 736 (1993). Our review is de novo. Mandziara v. Canulli, 299 Ill. App.3d 593, 596, 233 Ill.Dec. 484, 701 N.E.2d 127 (1998).
U.S. Fire initially argues that the June 1999 "arrangement" was not a settlement of the case but rather, an "abandonment of the insured" because: (1) the litigation against Laticrete continued after the agreement; and (2) no release of Zurich's duty to defend was obtained.
It is well established in Illinois that the primary insurer has a broad duty to defend its insured. See Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992). The applicable provision of the Zurich policy regarding defense of Laticrete, Coverage A, section 1(a)(2), provides as follows:
"Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C."
Zurich responds that its payment to Eastbank on behalf of Laticrete was, in fact, a *296 settlement. Citing authority primarily outside Illinois' jurisdiction, Zurich states that its policy with Laticrete terminated when Zurich exhausted the applicable limit of insurance in the payment of judgments or settlements (see, e.g., Teigen v. Jelco of Wisconsin, Inc., 124 Wis.2d 1, 8, 367 N.W.2d 806, 810 (1985)), and that its payment to Eastbank on behalf of Laticrete in the amount of $956,648.11 exhausted Zurich's remaining policy limit. In addition,Zurich notes that in exchange for payment of $7 million dollars, Eastbank provided a covenant not to execute any judgment it might receive in the Eastbank action against either Laticrete or Zurich, thereby protecting Laticrete from any and all financial exposure or obligation in connection with the Eastbank action. Zurich argues that U.S. Fire is incorrect in framing the question of whether it fulfilled its duty to defend Laticrete in settling with Eastbank as one of fact; Zurich argues that this question is one of law: "The determination of the rights and obligations under an insurance policy is a question of law that is appropriate for disposition by way of summary judgment." Douglas v. Allied American Insurance, 312 Ill.App.3d 535, 538, 245 Ill.Dec. 123, 727 N.E.2d 376 (2000).
In support, Zurich cites California Casualty Insurance Co. v. State Farm Mutual Automobile Insurance Co., 185 Ariz. 165, 913 P.2d 505 (1996). There, the primary insurer settled a claim for its policy limit in exchange for a covenant not to execute against the insured's personal assets, although the plaintiff was still free to pursue a claim against the excess insurer. The tort plaintiff did not sign the covenant not to execute for two years and the court held that the primary insurer's duty to defend terminated at the time of the executed covenant, which constituted a settlement. Thus, the primary insurer was required to reimburse the excess insurer only for defense costs incurred prior to the execution of the covenant. Zurich argues that U.S. Fire is similarly not entitled to reimbursement for defense costs incurred after execution of the settlement and covenant.
Zurich also relies on Teigen. There, the Wisconsin Supreme Court held that a primary insurer's settlement with the tort plaintiff (Teigen), in exchange for a release of liability of the primary insurer (Rural) and the insured (Jelco), minus the proceeds of the excess insurer's policy, satisfied the primary insurer's duties to its insured. The court found that the settlement satisfied the primary insurer's duty to defend and obligation of good faith to its insured because the insured was fully protected by the plaintiff's release of all claims to the insured other than those covered by the excess policy.
U.S. Fire distinguishes Teigen from the facts of the present case, arguing that the court there examined the factual circumstances surrounding the settlement from the standpoint of whether the settlement was fair to the excess carrier. In Teigen, the court stated that the primary carrier's arrangement would not prejudice the excess carrier because it would receive a credit for the amount paid by the primary carrier against any subsequent judgment or settlement against the insured. Teigen, 124 Wis.2d at 5, 367 N.W.2d at 808.
U.S. Fire essentially responds that this issue is controlled by Schal Bovis.[1] There, this court held that an excess insurance carrier (Northbrook Property & Casualty Company) stated a valid cause of action against two primary insurance carriers (Wausau Insurance Company and Great American Insurance Company) which *297 failed to settle a claim within their respective policy limits thereby causing Northbrook, the excess insurer, and Schal, the insured, to incur liability following a jury verdict: "The insured, primary carrier and excess carriers must therefore act reasonably and in good faith towards one another in considering the others' interests in negotiating a settlement." Schal Bovis, 314 Ill.App.3d at 572, 247 Ill.Dec. 750, 732 N.E.2d 1082.
Schal Bovis is distinguishable from the present case. While it is true that in Schal Bovis this court rejected the trial court's determination that a primary insurer has no duty toward an excess carrier ("A cause of action in favor of the excess carrier is therefore in the public interest as the settlement of good-faith disputes at or near the amount of an expected judgment will be promoted, with the consequence of less litigation over disputes that logically should not be litigated, as well as the result of lower insurance premiums for excess coverage") (Schal Bovis, 314 Ill. App.3d at 573, 247 Ill.Dec. 750, 732 N.E.2d 1082), the holding of that case was limited as follows:
"Our holding today only requires that a primary insurer estimate in good faith the expected verdict of the litigation threatening its insured and offer that amount in support of a proposed settlementat least to the extent consistent with the terms of its policy. The existence of other insurance is simply not relevant to the primary insurer's duty to offer its support to a settlement when it is reasonable to do so." (Emphasis added) Schal Bovis, 314 Ill.App.3d at 574, 247 Ill.Dec. 750, 732 N.E.2d 1082.
The Schal Bovis court remanded the matter to the trial court to allow the plaintiff to replead sufficient facts in its allegations to withstand a motion to dismiss.
In the present case, the record reflects an agreement between Zurich, Eastbank, and the insured, Laticrete, which resulted in a settlement and no ability to enforce a judgment against Laticrete. Zurich notes that Laticrete entered into the settlement in full knowledge that its insurance coverage could be diminished.
U.S. Fire further argues, based on Siligato v. Welch, 607 F.Supp. 743 (D.Conn. 1985), that the agreement (settlement) discharged Zurich's duty to indemnify but not its duty to defend. Siligato involved an automobile accident. Prior to judgment, the primary insurer, Metropolitan Property & Liability, struck a deal with the plaintiff, obtaining a release for itself and a covenant not to enforce any judgment against the assets of its insured. The plaintiff reserved its right to proceed against the insured, the Welches, and collect any judgment or settlement from an excess policy issued by Allstate. Allstate declined to defend the Welches, and the Welches filed an action in federal court against Allstate for declaratory judgment. The federal court ruled that Allstate was obligated to defend under the circumstances and that Metropolitan's arrangement with the plaintiff did not extinguish its duty to defend:
"The excess carrier's duty to defend is secondary to the duty of the primary insurer, but it is no less real a duty. * * * Metropolitans' settlement with Siligato may have discharged its duty to indemnify, and its concomitant duty to settle, but it did not terminate its duty to defend its insured to the conclusion of the claims which are within the coverage. [Citation.] The settlement may have escalated the immediacy and the degree of Allstate's participation in its insured's defense. In any default of the primary carrier's defense of their two insurers' joint insured, Allstate may be obligated to assume up to the total defense *298 of the insured subject to its right to be indemnified by the primary insurer for its expenses incurred by the excess insurer in discharging the primary insurer's duty to defend." Siligato, 607 F.Supp. at 746.
Siligato is distinguishable. The court there failed to analyze or discuss what actions terminated the primary insurer's duty to defend; the above passage is dicta.
In the present case, U.S. Fire claims it should be reimbursed for the defense expenses it incurred in discharging Zurich's duty to defend. Zurich argues that the record shows that the defense expenses incurred by U.S. Fire were incurred in discharging its own duty to defend, not Zurich's duty to defend, because the settlement agreement terminated Zurich's duty to defend. U.S. Fire's duty to defend is provided in its policy with Laticrete as follows:
"II. DEFENSE SETTLEMENT
(1) We shall have the right and duty to defend any `Claim' or `Suit' seeking damages covered by the terms and conditions of this policy when:
(a) the applicable limits of insurance of the underlying insurance policies set forth in Schedule A and to be maintained by you in accordance with Condition M of this policy (the `Underlying Insurance'), plus the applicable limits of other insurance have been exhausted by payments * * *."
Zurich notes that this duty-to-defend provision requires exhaustion by "payments" and does not specify by "settlement." Under this policy, U.S. Fire had the duty to defend Laticrete in the Eastbank action after Zurich exhausted its applicable policy limit via settlement. Our supreme court has held that an insurance provider has a duty to act in good faith in responding to settlement offers. Haddick v. Valor Insurance, 198 Ill.2d 409, 261 Ill.Dec. 329, 763 N.E.2d 299 (2001) (Emphasis added); see also Twin City Fire Insurance Co. v. Country Mutual Insurance Co., 23 F.3d 1175, 1178-79 (7th Cir.1994) (no direct duty exists between primary and excess insurer). As such, Zurich owed no independent duty to U.S. Fire to approve expert testing or to continue discovery during settlement negotiations.
Finally, U.S. Fire contends that Zurich shifted defense costs to U.S. Fire by suspending necessary defense preparation prior to "abandoning" Laticrete's defense. U.S. Fire relies upon the affidavit of Rochelle C. Jaffe, a principal of the engineering firm CTL, retained by Zurich in 1996, to investigate the causes of the curtain wall failure. Jaffe averred that environmental testing costing $210,000 was necessary to prepare for trial. U.S. Fire fails to cite to any case authority in support of its contention.
Under these facts, the record supports the existence of a proper settlement between Zurich, Laticrete and Eastbank. No outstanding material issue of fact remains on this issue.

V. DISMISSAL OF COUNTS I THROUGH IV OF U.S. FIRE'S SECOND AMENDED COMPLAINT
Next, U.S. Fire contends that the trial court erred in dismissing counts II through IV of its second amended complaint for failure to state a claim pursuant to section 2-615 of the Illinois Code of Civil Procedure.
The record shows that U.S. Fire appealed the dismissal of counts I through IV of its second amended complaint without requesting leave to file a third amended complaint. In its dismissal order, the trial court stated that its decision to dismiss counts I through IV was based upon the motions and memoranda submitted by the *299 parties and the subsequent oral arguments at the hearing.
A motion to dismiss under section 2-615 tests the legal sufficiency of a pleading. Doe v. Calumet City, 161 Ill.2d 374, 384, 204 Ill.Dec. 274, 641 N.E.2d 498 (1994). In determining the legal sufficiency of a complaint, all well-pleaded facts are taken as being true and all reasonable inferences from those facts are drawn in favor of the plaintiff. Connick v. Suzuki Motor Co., 174 Ill.2d 482, 490, 221 Ill.Dec. 389, 675 N.E.2d 584 (1996). The question on appeal from the granting of a section 2-615 motion is whether the allegations in the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. Connick, 174 Ill.2d at 490, 221 Ill.Dec. 389, 675 N.E.2d 584. The sufficiency of a complaint is an issue of law which we review de novo. People ex rel. Devine v. $30,700.00 United States Currency, 316 Ill.App.3d 464, 474, 249 Ill.Dec. 295, 736 N.E.2d 137 (2000).

A. COUNT II
In count II, U.S. Fire alleged that a primary insurer owes direct duties to an excess insurer. U.S. Fire relies on Schal Bovis, as cited in its prior argument. Schal Bovis does not hold that a primary insurer owes a direct duty to an excess insurer, as explained above. Rather, Schal Bovis, in dicta, "predicted" that Illinois would recognize such a duty:
"[W]e find that there is a duty which runs from Wausau and Great American [primary insurers] to Northbrook [excess insurer] to act reasonably and in good faith in attempting to settle claims within their respective policy limits. The leading case finding such a duty is Transit Casualty Co. v. Spink Co., 94 Cal.App.3d 124,156 Cal.Rptr. 360 (1979), which recognized a three-way relationship between the policyholder, the primary insurer and the excess insurer. This relationship creates reciprocal duties of care in the conduct of settlement negotiations.
* * *
"[W]hile federal courts do not bind our State courts in such matters, we note that at least two federal decisions have predicted that Illinois would recognize such a duty. American Centennial Insurance Co. v. American Home Assurance Co., 729 F.Supp. 1228, 1231-32 (N.D.Ill.1990); Ranger Insurance Co. v. Home Indemnity Co., 714 F.Supp. 956 (N.D.Ill.1989)." Schal, 314 Ill.App.3d at 571-72, 247 Ill.Dec. 750, 732 N.E.2d 1082.
In American Centennial Insurance Co. v. American Home Assurance Co., 729 F.Supp. 1228 (N.D.Ill.1990), the District Court for the Northern District of Illinois similarly "predicted" the position of the Illinois courts as follows:
"This court believes that if the Illinois Supreme Court were faced with the issue, it would adopt the reasoning of the Ranger court and hold that a primary carrier does owe a direct duty of care to an excess carrier while conducting settlement negotiations of claims against the insured when it knows of the excess carrier's existence at the time of the negotiations." American Centennial, 729 F.Supp. at 1232.
U.S. Fire notes that New York courts have held that a primary insurer owes a direct fiduciary duty to its excess insurer to exercise good faith in handling the defense of claims and to safeguard the rights and interests of the excess insurer (see, e.g., Argonaut Insurance Co. v. Hartford Accident & Indemnity Insurance Co., 687 F.Supp. 911 (S.D.N.Y.1988)), and the Michigan Supreme Court has "signaled its *300 intention" to recognize a direct duty, while declining to do so. (Commercial Union Insurance Co. v. Medical Protective Co., 426 Mich. 109, 123-24, 393 N.W.2d 479, 485 (1986) (holding that the case "does not present itself as the best vehicle for recognition of a direct duty cause of action in tort between a primary insurer and excess insurer")). U.S. Fire states that there is no reported case interpreting Connecticut law on the subject of a direct duty (despite the case cited by Zurich in issue I), so that if Connecticut law controls, the choice of law should revert to Illinois law.
Zurich responds that the case of Twin City Fire Insurance Co. v. Country Mutual Insurance Co., 23 F.3d 1175, 1180 (7th Cir.1994), negated both the American Centennial and Ranger decisions. There, the Seventh Circuit court of Appeals held that an primary insurer does not have a tort duty to the excess insurer because it has a contractual remedy against the primary insurer, finding that "it would be quite a leap to suppose that Illinois, not yet having even confronted the issue of a derivative duty, would recognize a direct duty." Twin City, 23 F.3d at 1179.
Zurich further relies on Walbrook Insurance Co. v. UNARCO Industries, Inc., No. 90 A 519, 1992 WL 159266 (N.D.Ill. June 23, 1992), which held that "in the absence of a relationship, contractual or otherwise, between the primary and excess insurers, the court does not believe the Illinois Supreme Court would impose a direct duty upon the primary insurer." Walbrook, slip op. at 3.
Illinois does not impose a duty by the primary insurer to the excess carrier, despite the "predictions" of the various courts and authority outside Illinois' jurisdiction. A sufficient pleading necessitates supporting authority that is lacking in U.S. Fire's allegations of count II. We therefore find that the trial court properly dismissed count II of its second amended complaint.

B. COUNT III
In count III, U.S. Fire alleged that Zurich breached its duties as the equitable and contractual subrogee of Laticrete. U.S. Fire alleged that the settlement with Eastbank allowed U.S. Fire to step into the shoes of Laticrete and allowed it to invoke Zurich's duties to Laticrete. U.S. Fire argues that it paid a "substantial amount of money" to extinguish Laticrete's liability to Eastbank and that, by doing so, it became subrogated to the rights of Laticrete arising from the Eastbank litigation, including any claim that Laticrete had against Zurich for negligent defense or settlement of the underlying litigation.
As a subrogee of Laticrete, U.S. Fire was subrogated to the position of Laticrete and acquired no lesser or greater rights than those held by Laticrete as to Zurich. The complaint pleaded that Laticrete consented to the settlement with Eastbank, contributed its own money to the settlement and executed a limited release of Zurich. These actions thus barred any bad-faith claim by Laticrete against Zurich arising out of Zurich's conduct in the Eastbank action and defeated U.S. Fire's subrogated claim against Zurich. See Westchester Fire Insurance Co. v. General Star Indemnity Co., 183 F.3d 578, 583 (7th Cir.1999) (an insured's consent can bar an excess insurer's claim). U.S. Fire provided only "conclusory" allegations in support of its contention, and the trial court noted that at oral arguments.
U.S. Fire has failed to show that Zurich breached any duties owed to Laticrete therefore it cannot show that Zurich breached any duties owed to U.S. Fire. This count, too, was properly dismissed.

*301 C. COUNT IV
U.S. Fire also contends that the trial court erred in dismissing count IV for "breach of common law duties voluntarily assumed." U.S. Fire alleged that Zurich failed to review mediation materials and perform an evaluation of Laticrete's potential exposure based upon those materials. U.S. Fire alleged that Zurich failed to inform it of the mediator's demand for a larger contribution from Zurich at mediation or to advise U.S. Fire that its interests were at stake.
Zurich responds that it did not assume a duty toward U.S. Fire to evaluate the Eastbank action and advise U.S. Fire of that evaluation. Zurich admits that while it did respond to a letter by U.S. Fire requesting information, and reply that it would be preparing an evaluation for Zurich, a request for information does not create a duty. Furtak v. Moffett, 284 Ill. App.3d 255, 257-58, 219 Ill.Dec. 660, 671 N.E.2d 827 (1996) (procedures instituted to determine whether insureds were underinsured was not an assumption of a duty to warn insureds of inadequate insurance).
The trial court properly dismissed count IV for failure to plead a breach of the alleged assumed duty to U.S. Fire.

CONCLUSION
For all of the reasons stated above, we affirm the judgment of the trial court. In light of our holding, we need not address the trial court's rulings entered pertinent to the stay of discovery.
Affirmed.
REID, J., concurs.
GREIMAN, J., dissents.
Justice GREIMAN, specially concurring in part and dissenting in part:
I must respectfully dissent from the majority's conclusions as to count II of U.S. Fire's complaint. Our courts have long provided that a primary insurer has a duty to act in good faith towards its own insured and that such duty to act in good faith extends to the settlement and disposition of cases generally.
Admittedly, it is less clear whether the primary carrier has a corresponding duty of good faith to an excess carrier.
However, contrary to the majority's suggestion, this court in Schal Bovis, Inc. v. Casualty Insurance Co., 314 Ill.App.3d 562, 247 Ill.Dec. 750, 732 N.E.2d 1082 (1999), held that such a duty exists in Illinois. Although the majority opinion states that Schal Bovis merely predicted that the Illinois courts would impose such a duty, the clear implications of Schal Bovis is that such a duty, in fact, exists. There the court opined that:
"there is a duty that runs from [the primary insurer to the excess insurer] to act reasonably and in good faith in attempting to settle claims within their respective policy limits." Schal Bovis, 314 Ill.App.3d at 572, 247 Ill.Dec. 750, 732 N.E.2d 1082.
It is difficult to imagine how the Schal Bovis court (of which the authoring judge here was a concurring member) could have been more explicit. They further cite a California case Transit Casualty v. Spink Co., 94 Cal.App.3d 124, 134, 156 Cal.Rptr. 360, 366 (1979), which "recognized a threeway relationship between the policyholder, the primary insurer and the excess insurer." Additionally, Schal Bovis noted that two previous federal decisions predicted that Illinois would recognize such a duty. American Centennial Insurance Co. v. American Home Assurance Co., 729 F.Supp. 1228 (N.D.Ill.1990); Ranger Insurance Co. v. Home Indemnity Co., 714 F.Supp. 956 (N.D.Ill.1989).
*302 The only limitation expressed in Schal Bovis was that it be remanded to the trial court to allow the plaintiff to file an amended complaint setting out the evil facts of which the primary insurer was accused.
Illinois is not alone in recognizing a cause of action for the primary insurer's failure to exercise good faith with respect to the interest of the excess carrier. California, Florida, Louisiana, Massachusetts, Michigan and Texas have so held.[2]
It is interesting to note that the majority gives more credence to a federal district court case, Walbrook Ins. Co. v. UNARCO Industries, Inc., than it does to a decision of this court such as Schal Bovis. The Walbrook case, however, is distinguished by its facts and the acts of the primary insurer.
U.S. Fire alleges in count II, among other things, that during the mediation process, extensive mediation summaries and voluminous exhibits were provided to Zurich showing damage exceeding $39 million and that the insured was a primary target of the defendants. Additionally, Zurich had in its possession a substantial number of other documents indicating the insured's likely exposure to the claim including inspection reports, expert opinions, complaints, letters from representatives of the insured, correspondence from various subcontractors, and reports from experts. Additionally, U.S. Fire alleges that internal liability reports of Zurich estimated the verdict potential against the insured between $1.8 million and $3 million, none of which was shared with U.S. Fire prior to the mediation conference.
U.S. Fire further alleges that although the insured was joined as a defendant in December 1992, U.S. Fire received no notice from Zurich of the pendency of the lawsuit until June 1993. U.S. Fire repeatedly requested that Zurich provide it with periodic status reports regarding the progress of litigation and evaluations of the insured's exposure. These requested items were not appropriately forthcoming and Zurich failed to appraise U.S. Fire of the nature and extent of the insured's potential exposure.
At the time of the mediation conference, U.S. Fire claims Zurich stated it would offer no more than $250,000 and the mediator essentially threw it out of the mediation process. All of these matters were not passed on to U.S. Fire.
In reliance upon Zurich's evaluation and its direct suggestion, U.S. Fire did not attend or participate in the mediation conference.
At the conclusion of the mediation conference, the plaintiffs in the underlying case entered into settlements with all of the defendants except the insured. All of the claims against the other defendants being assigned to the underlying plaintiff.
Finally, apparently realizing its difficult position, Zurich arranged for a settlement of claims against itself and exoneration of the primary insured by paying about $1 million on its behalf and $6 million by the insured with a covenant not to levy and execute upon their property leaving U.S. Fire with a huge, unsuspected and unexpected liability. Talk about "good faith"!
Zurich sought to control the entire defense without providing U.S. Fire with appopriate *303 information and, in fact, lulling U.S. Fire to be misled with respect to the course of mediation. The $250,000 Zurich believed would settle the case turned in a settlement of $7 million.
Some writers have suggested: "Extending an insurer's fiduciary duty to include an excess carrier is a logical step. Although only the first district has expressly done so, primary insurers would be wise to assume that Schal Bovis will be followed and extended. Exactly what constitutes bad faith will be defined and further developed as more courts address this issue." B. Boggs & D. McLaughlin, Primary Insurers' Duty to Exercise Good Faith Toward Excess Insurance Carriers, Vol. 90, No. 1 Ill. B.J. 18, 23 (January 2002).
I believe liability in this case is that logical step and that U.S. Fire has adequately alleged bad faith in count II. I would affirm with respect to the other counts.
NOTES
[1] Schal Bovis is also the basis for count II of U.S. Fire's complaint.
[2] Peter v. Travelers Insurance Co., 375 F.Supp. 1347 (C.D.Cal.1974); Phoenix Insurance Co. v. Florida Farm Bureau of Mutual, 558 So.2d 1048 (1990); Rangewr Insurance Co. v. Travelers Indemnity Co., 389 So.2d 272 (1980); Great Southwest Fire Co. v. CNA Insurance Co., 547 So.2d 1339 (La.App.1989); Hartford Casualty Insurance Co. v. New Hampshire Insurance Co., 417 Mass. 115, 628 N.E.2d 14 (1994); Commercoal Union Insurance Co. v. Medical Protective Co., 426 Mich. 109, 393 N.W.2d 479 (1986) and American Centennial Insurance Co. v. Canal Insurance Co., 843 S.W.2D 480 (Tex. 1992).