MARY MANDZIARA, Plaintiff-Appellee and Cross-Appellant, v. MICHAEL D. CANULLI, Defendant-Appellant and Cross-Appellee (Northwest Community Hospital, Defendant).

First District (4th Division)   No. 1—97—4644

Opinion filed September 24, 1998.

Michael D. Canulli, of Oak Brook, for appellant.

James L. Tuohy, of Tuohy & Martin, of Chicago, for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

When patients receive treatment from a mental health professional, they have a right to expect that in most circumstances their records will be kept in confidence. That is the promise made by the Mental Health and Developmental Disabilities Confidentiality Act (the Act) (740 ILCS 110/1 *et seq.* (West 1994)).

The question in this case is whether Mary Mandziara (Mandziara) has the right to sue a lawyer who obtained and served a subpoena for her records, which were then brought to a courtroom and used by a judge. We hold that she does. For that reason, we reverse the trial court's summary judgment in favor of Michael Canulli (Canulli), the lawyer. We also affirm the trial court's denial of Canulli's petition for sanctions under Illinois Supreme Court Rule 137 (155 Ill. 2d R. 137).

FACTS

Mary Mandziara and her first husband, Earl Jursich (Jursich), divorced in 1989. Mandziara received sole custody of their two children.

On November 17, 1992, Jursich, through his attorney, Michael Canulli, brought an emergency petition to modify child custody before

the trial court. This petition alleged Jursich learned that on November 6, 1992, Mandziara had attempted suicide and was hospitalized at Northwest Community Hospital (the Hospital). The petition asked the court to determine Mandziara's fitness to retain sole custody of the children.

In connection with the petition, Canulli served a subpoena *duces tecum* on the records custodian at the Hospital. The subpoena requested the records custodian to appear in court to testify about Mandziara's medical records dating from January 1, 1990, to November 17, 1992. Canulli did not obtain a court order to serve the subpoena on the Hospital.

On November 17, Mandziara appeared without a lawyer. Canulli represented Jursich. The Hospital's records custodian, Helen Langer (Langer), appeared in court with the subpoenaed records on Mandziara's hospitalization but did not give the records to Canulli. Instead, Canulli called Langer as a witness, and Langer gave Mandziara's records directly to the trial court. The court reviewed the records in open court and then questioned Mandziara about her hospitalization and about certain notes in the records. At the close of the hearing, the court awarded temporary custody to Jursich. Eventually, after several months, Mandziara regained sole custody.

On April 19, 1994, Mandziara filed a complaint against the Hospital for releasing her records without a court order, in violation of the Mental Health and Developmental Disabilities Confidentiality Act. On October 18, 1994, the trial court granted summary judgment to the Hospital in a final and appealable order. Mandziara appealed.

This court affirmed in a summary order. See *Mandziara v. Northwest Community Hospital*, No. 1—94—4045 (May 2, 1996) (unpublished under Supreme Court Rule 23). Although this court acknowledged Canulli did not attach a court order to the records subpoena, it held section 10(b) of the Act (see 740 ILCS 110/10(b) (West 1994)) protected the Hospital from liability:

> "While we do not condone the trial judge's actions in commenting upon Mandziara's records in open court, this was beyond the control of Northwest Community Hospital or its records custodian. We find [the Hospital] did nothing more than follow section [ ]10(b) of the Act in that it provided the court with Mandziara's medical records pursuant to a request from an interested party for the sole purpose of an in camera inspection to determine their relevance to the child custody issue." *Mandziara*, slip op. at 3.

On October 20, 1994, Mandziara filed an amended complaint against both the Hospital and Canulli. The amended complaint alleged Canulli violated the Act by serving a subpoena on the Hospital without

a court order. On March 7, 1997, the trial judge, not the judge who conducted the custody hearing, granted summary judgment to Canulli. Canulli filed a petition for sanctions under Illinois Supreme Court Rule 137. On October 20, 1997, the court denied Canulli's petition. On November 21, 1997, the court denied his motion to reconsider.

Canulli now appeals the trial court's Rule 137 ruling, and Mandziara cross-appeals the court's summary judgment for Canulli.

## DECISION

### 1. Mandziara's Cross-Appeal

Mandziara contends Canulli violated the Act by failing to obtain a court order before serving a records subpoena on the Hospital. Mandziara further contends the trial court erred in finding as a matter of law this statutory violation did not cause her to lose sole custody.

■ Appellate review of an order granting summary judgment is *de novo*. *Kotarba v. Jamrozik*, 283 Ill. App. 3d 595, 596, 669 N.E.2d 1185 (1996). The appellate court must consider anew the facts and the law related to a case to determine whether the trial court correctly decided that no genuine issue of material fact was present. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113, 649 N.E.2d 1323 (1995); *Deloney v. Board of Education*, 281 Ill. App. 3d 775, 780, 666 N.E.2d 792 (1996). If the plaintiff fails to establish any element of the cause of action, summary judgment in favor of the defendant is proper. *Flint v. Court Appointed Special Advocates of Du Page County, Inc.*, 285 Ill. App. 3d 152, 162, 674 N.E.2d 831 (1996).

■ At the time Mandziara filed her complaints, the Act provided:

"(a) Except as provided herein, in any civil, criminal, administrative, or legislative proceeding, or in any proceeding preliminary thereto, a recipient [of mental health services], and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications.

(1) Records and communications may be disclosed in a civil, criminal or administrative proceeding in which the recipient introduces his mental condition or any aspect of his services received for such condition as an element of his claim or defense, if and only to the extent the court in which the proceedings have been brought, *** finds, after in camera examination of testimony or other evidence, that it is relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible; that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by such evidence; and that disclosure is

more important to the interests of substantial justice than protection from injury to the therapist-recipient relationship or to the recipient or other whom disclosure is likely to harm. \*\*\*

\* \* \*

(b) Before a disclosure is made under subsection (a), any party to the proceeding or another interested person may request an in camera review of the record or communication to be disclosed. The court \*\*\* conducting the proceeding may hold an in camera review on its own motion. \*\*\* The court \*\*\* may prevent disclosure or limit disclosure to the extent that other admissible evidence is sufficient to establish the facts in issue. The court \*\*\* may enter such order as may be necessary \*\*\* to protect the confidentiality, privacy, and safety of the recipient \*\*\*.

\* \* \*

(d) No party to any proceeding described under \*\*\* subsection (a) \*\*\*, nor his or her attorney, shall serve a subpoena seeking to obtain access to records or communications under this Act unless the subpoena is accompanied by a written order issued by a judge, authorizing the disclosure of the records or the issuance of the subpoena. No person shall comply with a subpoena for records or communications under this Act, unless the subpoena is accompanied by a written order authorizing the issuance of the subpoena or the disclosure of the records." 740 ILCS 110/10 (West 1994).

The Act further provides, "Any person aggrieved by a violation of this Act may sue for damages, an injunction, or other appropriate relief." 740 ILCS 110/15 (West 1994).

The reasons for protecting mental health records were described in *Laurent v. Brelji*, 74 Ill. App. 3d 214, 217, 392 N.E.2d 929 (1979):

"Presumably, the patient in psychotherapeutic treatment reveals the most private and secret aspects of his mind and soul. To casually allow public disclosure of such would desecrate any notion of an individual's right to privacy. At the same time, confidentiality is essential to the treatment process itself, which can be truly effective only when there is complete candor and revelation by the patient. Finally, confidentiality provides proper assurances and inducement for persons who need treatment to seek it."

Here, Mandziara correctly relies on *Renzi v. Morrison*, 249 Ill. App. 3d 5, 618 N.E.2d 794 (1993). In *Renzi*, the plaintiff was a psychiatric patient of the defendant. After the plaintiff's husband spoke with the defendant, he filed a divorce petition and an emergency petition for temporary child custody. The defendant voluntarily appeared at the custody hearing to testify for the plaintiff's husband. The trial

court allowed the defendant to testify, and the defendant revealed information that was contained in the plaintiff's confidential mental health records. Based on this testimony, the trial court awarded temporary custody to the plaintiff's husband. Later, the plaintiff filed an action for damages based on the defendant's violation of the Act. The trial court denied the defendant's motion to dismiss based on common law witness immunity.

This court affirmed. We held section 10 grants the recipient of services a privilege to refuse or prevent disclosure. *Renzi*, 249 Ill. App. 3d at 8. Any common law right to witness immunity that might exist "must give way" to that statutory privilege. *Renzi*, 249 Ill. App. 3d at 8. There was no testimonial privilege in *Renzi* because the psychiatrist appeared voluntarily and offered to testify for Renzi's husband. *Renzi*, 249 Ill. App. 3d at 9. The Act, we said, provides safeguards to balance a patient's privacy with the trial court's truth-seeking function. *Renzi*, 249 Ill. App. 3d at 8.

The instant case and *Renzi* share several similarities. Although the defendant in *Renzi* testified voluntarily, while Langer testified pursuant to Canulli's subpoena, both the defendant in *Renzi* and Canulli contributed to the unauthorized disclosure of confidential mental health records. Langer, a records custodian, obeyed the subpoena by appearing in court with Mandziara's records (without a court order), and the trial court reviewed the subpoenaed records in open court on the record, not *in camera*.

Canulli contends he actually complied with the legislative intent of ensuring confidentiality by requesting that the Hospital's records custodian produce the records to the trial court for *in camera* review. That was not compliance. In every case, "subpoenaed material is ordinarily to be delivered directly to the court because the subpoena is a judicial process or writ of the court." *People v. Kaiser*, 239 Ill. App. 3d 295, 301, 606 N.E.2d 695 (1992). Mental health records initially would appear before the court, regardless of whether Canulli sought access for himself or Jursich. Canulli knew or should have known disclosure would occur once the records reached the courtroom.

Canulli's subpoena *duces tecum* asked Langer to appear in court on November 17, 1992, to testify. The subpoena also included a second page (labeled "Exhibit 'A' "), calling for Mandziara's mental health records that Canulli wanted Langer to bring to court. Canulli requested, *inter alia*, "Any and all admission or discharge records for any inpatient, outpatient or other care and treatment for [Mandziara]"; "Any and all medical records relating to [Mandziara] for inpatient, outpatient or other care or treatment"; "Any and all diagnosis, treatment or prognosis by for or relating to [Mandziara] physi-

cally, psychologically, emotionally or otherwise"; and "Any and all other health related records, however[ ] labeled or described concerning [Mandziara] not otherwise produced." Canulli limited the scope of his list: "The relative time period for the Notice for the hospital is January 1, 1990 to date of hearing." Nothing in this remarkably broad subpoena limits production of the records to an *in camera* hearing by a judge. Nor does the subpoena prohibit disclosure to Canulli in the first instance. And, of course, it extends far beyond the purported suicide attempt of November 6, 1992.

Canulli's insistence that he did not seek access is contradicted by the record. At the emergency custody hearing on November 17, 1992, Canulli asked, "Judge, would the Court allow me also to be with the Court in reviewing the records?" Canulli clearly sought access for himself and Jursich by issuing a records subpoena.

The Act is "carefully drawn to maintain the confidentiality of mental health records except in the specific circumstances specifically enumerated." *Sassali v. Rockford Memorial Hospital*, 296 Ill. App. 3d 80, 84-85, 693 N.E.2d 1287 (1998). The General Assembly has made a strong statement about the importance of keeping mental health records confidential. If we were to hold Canulli did not violate the Act merely because he did not look at Mandziara's records, we would be rewriting the statute, effectively eroding unmistakable legislative intent under the weight of judicial fiat.

Section 10(d) clearly says: no subpoenas are to be served without court orders. Nothing in section 10(d) excuses a court order when the records are first examined by the trial judge. Canulli's subpoena violated the specific terms of section 10(d) because he served it without first obtaining a court order. Although Canulli no doubt was trying to protect his client's children, his motives have nothing to do with the legislative judgment that mental health records should not be surrendered as a matter of course. Whether the records should leave the hospital is a decision for an impartial judge to make, not a lawyer representing a client.

Had Canulli sought the proper court order, with notice to Mandziara, the trial judge may have been alerted to the inappropriateness of the subpoena. Or he may have signed the order contemplated by section 10(d). The only way to find out was to ask.

Section 10(a)(1) allows disclosure of confidential mental health records only when the patient introduces her mental health as an element of her claim or defense. 740 ILCS 110/10(a)(1) (West 1994). "A recipient [of mental health services] waives the confidentiality of her records only if she affirmatively places her own mental condition at issue." *Sassali*, 296 Ill. App. 3d at 83 (state's filing of involuntary admis-

sion petition is not a waiver by patient). Disclosure under both section 10(b) and section 10(d) is subject to the threshold requirements of section 10(a)(1). Mandziara did not introduce the issue of her mental health. Her husband, through his lawyer, did. Because section 10(a)(1) was not satisfied, there could be no waiver. Disclosure under either section 10(b) or section 10(d) was not authorized by the statute.

We note this is not a case where strict compliance with section 10(a)(1) can be excused because the recipient of services "seeks to utilize those protections as a sword rather than a shield to prevent disclosure of relevant, probative, admissible, and not unduly prejudicial evidence that has the potential to fully negate the claim plaintiff asserted against defendants and absolve them of liability." *D.C. v. S.A.*, 178 Ill. 2d 551, 570, 687 N.E.2d 1032 (1997). Mandziara did not bring this action. She did not ask to be brought into a courtroom to face a challenge to the custody of her children.

Nor were the other provisions of section 10(a)(1) followed in this case. Section 10(a)(1) presents a sophisticated balancing test in which "the trial court must make several findings regarding the use of the records, including that they are 'relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible.' " *Sassali*, 296 Ill. App. 3d at 83, quoting 740 ILCS 110/10(a)(1) (West 1994). In inexplicable haste, the trial court in the custody hearing repeatedly asked for Mandziara's records to "obviate the need for a hearing." The court never considered admissibility nor did it weigh Mandziara's privacy interests with "the interests of substantial justice." 740 ILCS 110/10(a)(1) (West 1994).

Langer handed the records to the court, and the judge reviewed them on the record in open court, not *in camera*. The court improperly disclosed confidential mental health records without meeting the threshold of section 10(a)(1). If Canulli had obtained judicial review before the subpoena reached Langer, the unauthorized disclosure could not have occurred. And while Canulli's actions "may have placed the records into the hands of the person who would have, in all likelihood, eventually received them, that fact goes only to the question of damages and not to the propriety of the disclosure itself." *Sassali*, 296 Ill. App. 3d at 85.

We also note the trial court's discomfort with the fact Mandziara was not represented by a lawyer. In fact, the judge said, "Ma'am, I think you should have a lawyer." We agree. A short continuance for that purpose would have been desirable.

The March 7, 1997, order granting summary judgment to Canulli does not specifically address causation and damages issues raised by the parties to this appeal. Nor do we have a transcript of the proceed-

ings at the time summary judgment was granted to Canulli. We have not been made privy to that trial judge's reasoning.

■ The record clearly shows the judge who conducted the custody hearing relied only on the subpoenaed hospital records when he awarded temporary custody of the children to Jursich. No other evidence was received. If the trial judge who later granted summary judgment did not find summary judgment would be inappropriate on the causation issue, we do.

We also believe the damages issue survives a summary judgment motion. Section 15 of the Act provides for a damages claim by a person aggrieved by a violation of the Act. We have said: "The statute clearly indicates the legislature intended to modify absolute common law witness immunity in order to provide a remedy of damages against persons who violate the act." *Renzi*, 249 Ill. App. 3d at 8. We believe the same legislative intent applies to those who are aggrieved by any violation of section 10(a)(1) or section 10(d). The nature and extent of those damages are matters to be determined on another day. See *Person v. Behnke*, 242 Ill. App. 3d 933, 937, 611 N.E.2d 1350 (1993) (loss of custody of a child is a compensable injury in a legal malpractice claim).

Mandziara's appeal in this case concerns only section 10(d) of the Act. We need not revisit our summary order in Mandziara's earlier appeal of her unsuccessful claim against the Hospital. The order did not refer to section 10(d). Nothing we say here should be taken as a statement regarding the correctness of our earlier order.

2. Canulli's Appeal

Canulli contends Mandziara's amended complaint contains allegations that demonstrate Mandziara and her attorney failed to investigate whether Canulli received and disclosed the subpoenaed records. Canulli further contends the trial court abused its discretion in denying his Rule 137 sanctions petition.

■ Rule 137 serves as a bulwark against truly frivolous litigation, not as a penalty against unsuccessful litigants. See *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074, 651 N.E.2d 601 (1995). The trial court must employ an objective standard to determine whether a party made a reasonable inquiry; subjective good faith is insufficient to meet the burden of Rule 137. *Edwards v. Estate of Harrison*, 235 Ill. App. 3d 213, 221, 601 N.E.2d 862 (1992); *In re Marriage of Irvine*, 215 Ill. App. 3d 629, 638, 577 N.E.2d 462 (1991).

■ The trial court's ruling on Rule 137 sanctions is entitled to considerable deference on review, and this court will not disturb a

sanctions ruling absent an abuse of discretion. *Speigel v. Hollywood Towers Condominium Ass'n*, 283 Ill. App. 3d 992, 1001, 671 N.E.2d 350 (1996); *Espevik v. Kaye*, 277 Ill. App. 3d 689, 697, 660 N.E.2d 1309 (1996). A trial court exceeds its discretion on sanctions only where no reasonable person would take the view adopted by it. *Lewy v. Koeckritz International, Inc.*, 211 Ill. App. 3d 330, 334-35, 570 N.E.2d 361 (1991).

■ The trial court did not abuse its discretion in denying Canulli's sanctions petition. Because Canulli violated the Act when he served a records subpoena on the Hospital without a court order, Mandziara's claim under the Act was factually and legally viable. Additionally, although Canulli contends Mandziara's amended complaint erroneously alleges Canulli received, produced, and disclosed the subpoenaed records in court, Langer appeared with the records in court only after receiving Canulli's subpoena. Disclosure of the records was predictable, and Canulli either knew it or should have known it. Mandziara's complaint was close enough.

Canulli also contends the trial court's ruling violated Rule 137 because the record does not include special findings. In denying Canulli's sanctions petition, the trial court said:

"Based on my reading of [Rule 137] *** I find there is no real showing of unreasonableness in [Mandziara's] inquiry. I think there is a basis for it in fact and in law.

And the fact that there was summary judgment motion which was granted basically supported the belief that issues of fact and law can be and are decided by summary judgment motions, and that I don't see unreasonable conduct here. So, your motion for sanctions is denied."

Rule 137 on its face only requires the court to enunciate its reasons for granting sanctions, not for denying them. See 155 Ill. 2d R. 137; accord *In re Marriage of Schneider*, 298 Ill. App. 3d 103 (1998); but see *North Shore Sign Co. v. Signature Design Group, Inc.*, 237 Ill. App. 3d 782, 791, 604 N.E.2d 1157 (1992) ("we believe the trial court must at least express succinctly the basis for its decision even when it denies a motion for sanctions"). At any rate, the trial court's order was correct and was not an abuse of discretion.

CONCLUSION

The trial court did not abuse its discretion in denying Canulli's sanctions petition, and the trial court's ruling in the appeal is affirmed. However, the trial court incorrectly granted summary judgment to Canulli on Mandziara's amended complaint, and on cross-

appeal that order is reversed and remanded for proceedings consistent with this court's decision.

Affirmed in part and reversed and remanded in part.

SOUTH, P.J., and McNAMARA, J., concur.