# Illinois Official Reports

## Appellate Court

<table>
<tr><td colspan="2"><strong><em>Garton v. Pfeifer</em>, 2019 IL App (1st) 180872</strong></td></tr>
</table>

| | |
|---|---|
| Appellate Court Caption | RYAN GARTON, Plaintiff-Appellant, v. JEREMY PFEIFER, LINDA GARTON, and NORTHSHORE UNIVERSITY HEALTHSYSTEM, an Illinois Not-for-Profit Corporation, d/b/a NorthShore University HealthSystem Evanston Hospital, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-18-0872 |
| Filed | May 13, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-L-1291; the Hon. John H. Ehrlich, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; judgment modified.<br>Cause remanded. |
| Counsel on Appeal | Carlton Odim, of Odim Law Offices, and Andrew M. Stroth, of Action Injury Law Group, LLC, both of Chicago, for appellant.<br><br>James E. Abbott, of Litchfield Cavo, LLP, of Chicago, for appellee Jeremy Pfeifer.<br><br>Linda Garton, n.k.a. Linda Jacobs, of Evanston, appellee *pro se*. |

Jena Valdetero and Lauren J. Caisman, of Bryan Cave Leighton Paisner LLP, of Chicago, for other appellee.

Panel                    JUSTICE PIERCE delivered the judgment of the court, with opinion. Justices Griffin and Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Ryan Garton filed claims against defendants Jeremy Pfeifer, Linda Garton, and NorthShore University HealthSystem d/b/a NorthShore University HealthSystem Evanston Hospital (NorthShore) for alleged violations of the Mental Health and Developmental Disabilities Confidentiality Act (Act) (740 ILCS 110/1 *et seq.* (West 2014)). The circuit court entered summary judgment in favor of all defendants and denied Ryan's cross-motion for partial summary judgment. For the reasons that follow, the judgment of the circuit court is affirmed in part and reversed in part, we enter partial summary judgment in favor of Ryan on counts I and III of his amended complaint on the issue of liability, and we remand for trial on the issues of proximate cause and damages.

¶ 2                          I. BACKGROUND

¶ 3    This matter involves subpoenas that were issued by Linda's attorney Pfeifer, and complied with by NorthShore, during postdissolution of marriage proceedings. Ryan filed a petition for indirect criminal contempt against Linda, asserting that she was violating various orders regarding their minor children (contempt proceedings). The circuit court appointed attorney Sabra Ebersole as a special prosecutor to prosecute Ryan's petition.[1] On July 23, 2015, without filing a motion or notice of motion, or obtaining a court order, Pfeifer issued a subpoena to NorthShore seeking Ryan's mental health records (initial subpoena). NorthShore responded to the subpoena on July 29, 2015, by delivering the requested records to Judge Joseph D. Panarese, who was the judge presiding over the contempt proceedings. The contempt proceedings were subsequently reassigned to Judge Raul Vega.

¶ 4    Pfeifer requested that the circuit court disclose Ryan's mental health records. Ebersole, as special prosecutor, filed a written objection to the disclosure of Ryan's records, asserting that Pfeifer had not sought or obtained leave of court prior to issuing the subpoena, in violation of section 10(d) of the Act (*id.* § 10(d)). Ryan's counsel did not assert any written or oral objections to the disclosure request. On November 3, 2015, Judge Vega ordered that the copies of Ryan's mental health records that had been produced to the circuit court be sealed. Pfeifer stated on the record that he had not seen or reviewed the mental health records in any way. The circuit court ordered Pfeifer to reissue a subpoena to NorthShore with notice to Ryan and afforded Ryan and NorthShore an opportunity to file written objections to an *in camera* inspection of Ryan's records.

---

[1]The circuit court initially appointed attorney John DeLeon as the special prosecutor, but DeLeon was permitted to withdraw before the events relevant to this appeal.

¶ 5     On November 4, 2015, Pfeifer faxed a copy of the initial subpoena to NorthShore, along with a copy of the circuit court's November 3, 2015, order (reissued subpoena). On November 11, 2015, NorthShore responded to the reissued subpoena by sending Ryan's mental health records to Pfeifer's law office, even though the subpoena directed that the records be delivered to the circuit court. On December 3, 2015, during a hearing on whether to release Ryan's mental health records, the report of proceedings reflects that Pfeifer handed Judge Vega an opened envelope containing Ryan's mental health records. Pfeifer explained that his law partner had opened the envelope, saw that the contents related to Ryan, and did not look any further. Pfeifer stated, "I want the [c]ourt to understand that I did not look at them." The circuit court then heard argument on whether the records might contain relevant information, whether any privileges against disclosure applied, and whether the records should be released for an *in camera* inspection. The circuit court took the matter under advisement. On January 20, 2016, Judge Vega denied Linda's request to release Ryan's mental health records, denied Linda's request that the circuit court conduct an *in camera* inspection of the records, and ordered the records sealed.

¶ 6     Subsequently, Ryan initiated this freestanding action by filing a three-count amended complaint, asserting identical violations of the Act by each defendant.[2] Ryan alleged that Linda and Pfeifer had "devised a scheme to publicly disclose [Ryan's] health records" and that Linda "authorized" Pfeifer to issue the initial subpoena. Ryan asserted that the initial subpoena was "fraudulently issued" by Linda and Pfeifer, did not contain language required by the Act, and was served without proper notice and without leave of court. He further alleged that NorthShore complied with the initial subpoena despite its facial deficiencies and sent one copy of his records to Judge Panarese and a second copy of his records to Pfeifer. Ryan alleged "on information and belief" that Pfeifer gave a copy of the records to Linda and that Linda read the records. Ryan alleged that he "has been compelled and will be compelled to spend large sums of money, including legal fees and and [*sic*] costs to resist disclosure of the records ***, has suffered and will continue to suffer extreme mental and emotional distress, and has suffered other and related personal and pecuniary losses." Ryan's complaint only identifies the initial subpoena issued on July 23, 2015, and neither mentions nor alleges any injury arising out of the reissued subpoena.

¶ 7     Defendants filed separate answers to the amended complaint, and the parties engaged in discovery. Pfeifer moved for summary judgment on count I of the amended complaint, arguing that Ryan would not be able to prove that he was "aggrieved" under section 15 of the Act (*id.* § 15). Pfeifer argued that (1) a technical violation of the Act alone did not constitute being "aggrieved," (2) there was no evidence that anyone saw the records that the circuit court sealed and refused to review, (3) the records had no impact on the contempt judgment finding Linda not guilty, and (4) there was no evidence that Ryan suffered any damages as a result of the issuance of the subpoena. NorthShore's motion for summary judgment on count III raised substantially similar arguments. Linda's motion for summary judgment on count II asserted that she could not be held liable in connection with the subpoena because Pfeifer stated in his discovery deposition that he alone investigated whether any mental health records existed and further stated that Linda did not tell him about the existence of any mental health records.

---

[2]Count I of the amended complaint was directed at Pfeifer, count II was directed at Linda, and count III was directed at NorthShore.

Linda further argued that there were no facts to establish that she had anything to do with the issuance of the initial subpoena and that she never saw any of Ryan's mental health records.

¶ 8 Ryan filed a cross-motion for summary judgment on counts I and III against Pfeifer and NorthShore, respectively, and essentially argued that a violation of the Act was sufficient to establish liability. All of the motions for summary judgment were briefed. In his response to Pfeifer's and NorthShore's motions for summary judgment, Ryan asserted that he had "suffered emotional and psychological injuries." He supported this assertion with a footnote that stated, in relevant part, that "he also testified in his deposition *** about the physical and psychological effect of [defendants'] violations [of the Act], including anxiety, being violently ill, throwing up, overwhelmed [*sic*] with cold sweats, headaches, feeling violated and afraid." He provided citations to the pages and lines of the transcript of his own discovery deposition, which was attached as an exhibit to NorthShore's motion for summary judgment.

¶ 9 The circuit court granted defendants' motions for summary judgment and denied Ryan's cross-motion for partial summary judgment. The circuit court stated its reasoning on the record and incorporated those findings into a written order. First, the circuit court observed that there were no facts to support Ryan's allegations that (1) Linda and Pfeifer devised a scheme to issue the subpoenas, (2) Linda authorized Pfeifer to issue the subpoenas, or (3) Linda had any knowledge that Pfeifer issued the subpoenas. Furthermore, the circuit court observed that there were no facts tending to show that Linda ever saw Ryan's mental health records. The circuit court found that there was no genuine issue of material fact as to whether Linda's conduct caused any of the damages Ryan allegedly suffered. The circuit court therefore granted summary judgment in favor of Linda on count II of the amended complaint.

¶ 10 Next, with respect to Pfeifer's and NorthShore's motions for summary judgment, the circuit court observed that the initial subpoena was improperly issued but that the reissued subpoena "cured" any notice defects, since Ryan's attorney was present when Judge Vega ordered the subpoena to be reissued. It was undisputed that NorthShore responded to the reissued subpoena by sending the records to Pfeifer's office rather than to the circuit court. But according to the transcript of the December 3, 2015, hearing before Judge Vega, Ryan did not raise any objection when Pfeifer handed the judge an opened envelope containing Ryan's mental health records. The circuit court reasoned, therefore, that Ryan forfeited his claims because neither

> "[Ryan] nor his attorney felt at the time that there was any problem with an open envelope being handed to Judge Vega. He has no basis for claiming that he was injured as a result because that argument should have been raised to the [c]ourt so the judge could have considered it. But it wasn't. There was simply nothing done at the time."

¶ 11 The circuit court further observed that Ryan failed to produce any medical records reflecting any physical or mental injuries that he allegedly suffered as a result of the subpoenas. The circuit court stated,

> "So basically what it comes down to is no harm, no foul; that there certainly is a—there was a violation of the [Act]. And even if I assume that [Ryan] is aggrieved, which I think is questionable, what there is no question about is he doesn't have any damages because he didn't do anything about it the time he knew that he had been injured and made no objection to the documents being provided to Judge Vega."

¶ 12 The circuit court therefore entered summary judgment in favor of Pfeifer and NorthShore on counts I and III, respectively, and denied Ryan's cross-motion for summary judgment on

those counts. Ryan filed a timely notice of appeal.

¶ 13                                     II. ANALYSIS

¶ 14        On appeal, Ryan argues that the circuit court erred as a matter of law by concluding that he was not entitled to recover for defendants' clear violations of the Act. He argues that he did not waive any of his rights under the Act by failing to raise an objection in the contempt proceedings and asserts that he did object to the disclosure of his mental health records and to any *in camera* inspection of those records. He argues that there are material issues of fact as to whether he suffered damages because he supported the allegations in his complaint that he was injured as a result of defendants' violations of the Act with "uncontroverted evidence of his damages" in response to the motions for summary judgment in the form of his own deposition testimony.

¶ 15        At the outset, we remind NorthShore and Pfeifer that our supreme court's rules preclude parties from citing or relying on unpublished, nonprecedential orders from this court entered under Rule 23. Ill. S. Ct. R. 23(e)(1) (eff. Apr. 1, 2018) ("An order entered under subpart (b) or (c) of this rule is not precedential and may not be cited by any party except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case."). Both NorthShore's and Pfeifer's appellate briefs contain citations of orders entered pursuant to Rule 23. Those citations do not qualify for any of the exceptions identified in the rule, and those citations are therefore stricken.

¶ 16        Summary judgment is appropriate if the pleadings, depositions, affidavits, and other admissions on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 17. At the summary judgment stage, the circuit court must not make credibility determinations or weigh the evidence. *Gulino v. Economy Fire & Casualty Co.*, 2012 IL App (1st) 102429, ¶ 25. The purpose of summary judgment is not to try a question of fact but rather to determine whether one exists. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). "In determining whether a genuine issue of material fact exists, the court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the nonmovant." *West Bend Mutual Insurance Co. v. DJW-Ridgeway Building Consultants, Inc.*, 2015 IL App (2d) 140441, ¶ 20. A party moving for summary judgment bears the initial burden of production and may satisfy it by either showing that some element of the case must be resolved in its favor or that there is an absence of evidence to support the nonmoving party's case. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). Once the moving party satisfies that initial burden, the burden shifts to the nonmoving party to come forward with some factual basis that would entitle it to a favorable judgment. *Id.* We review a circuit court's ruling on summary judgment *de novo* (*Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 15), and we review the circuit court's judgment, not its reasoning (*Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995)).

¶ 17        The Act imposes stringent protections on the disclosure of mental health records for litigation purposes, identifies who may request the records and for what purposes, and regulates how the request for disclosure should be made and handled. Section 10(a) of the Act provides a recipient of mental health services a privilege against disclosure of mental health records in various proceedings. 740 ILCS 110/10(a) (West 2014). Section 10(a) identifies 12 situations in which mental health records may be disclosed and specifies the procedure for disclosure.

The only situation that is potentially relevant—but ultimately is not—is section 10(a)(1), which provides that, under certain circumstances, "[r]ecords and communications may be disclosed in a civil, criminal or administrative proceeding in which the recipient introduces his mental condition or any aspect of his services received for such condition as an element of his claim or defense." *Id.* § 10(a)(1).

¶ 18    Section 10(d) of the Act provides that no party or his or her attorney shall serve a subpoena for mental health records unless the subpoena is accompanied by a written court order or the written consent of the person whose records are being sought. *Id.* § 10(d). "No such written order shall be issued without written notice of the motion to the recipient [of the mental health treatment] and the treatment provider." *Id.* The circuit court must provide the parties and others entitled to notice an opportunity to be heard prior to issuing an order allowing the subpoena. *Id.* If the circuit court permits the subpoena to issue, a copy of the circuit court's written order must accompany the subpoena; compliance with the subpoena is prohibited if it is not accompanied by the circuit court's written order. *Id.* Finally, the subpoena

> "shall include the following language: 'No person shall comply with a subpoena for mental health records or communications pursuant to Section 10 of the Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS 110/10, unless the subpoena is accompanied by a written order that authorizes the issuance of the subpoena and the disclosure of records or communications or by the written consent under Section 5 of that Act of the person whose records are being sought.' " *Id.*

¶ 19    Section 15 of the Act provides, "Any person aggrieved by a violation of this Act may sue for damages, an injunction, or other appropriate relief. Reasonable attorney's fees and costs may be awarded to the successful plaintiff in any action under this Act."[3] *Id.* § 15. The Act does not define the term "aggrieved," and we therefore assume that the legislature intended it to have its popularly understood meaning. Aggrieved is defined as "suffering from an infringement or denial of legal rights." Merriam-Webster's Collegiate Dictionary 25 (11th ed. 2006).

¶ 20    In *Sassali v. Rockford Memorial Hospital*, we held that the Act is "carefully drawn to maintain the confidentiality of mental health records except in the specific circumstances explicitly enumerated." 296 Ill. App. 3d 80, 84-85 (1998). "The General Assembly has made a strong statement about the importance of keeping mental health records confidential." *Mandziara v. Canulli*, 299 Ill. App. 3d 593, 599 (1998).

¶ 21    It is clear from the record that neither Pfeifer nor NorthShore complied with the Act in issuing or responding to the initial subpoena. Ryan never introduced "his mental condition or any aspect of his services received for such condition as an element of his claim or defense" in the contempt proceeding he initiated against his former wife. 740 ILCS 110/10(a)(1) (West 2014). Instead, Ryan was going to be a witness at the trial on the criminal contempt petition filed against Linda that accused her of failing to comply with child custody orders entered in the divorce proceedings. In explaining why he issued the initial subpoena, Pfeifer argued that he sought Ryan's mental health records because those records might contain relevant information pertaining to Ryan's credibility. Section 10(a) does not contemplate the disclosure of mental health records for the purposes of attacking the credibility of a witness in a criminal

---

[3]The circuit court barred Ryan from recovering attorney fees in this action as a sanction for violating a discovery order. No issue is raised on appeal with respect to that order.

contempt trial, and Pfeifer advanced no statutory exemption to justify issuing the subpoena without complying with the Act. Clearly and unquestionably, the initial subpoena sought records for which no exception to the privilege against disclosure applied.

¶ 22    Furthermore, both Pfeifer's issuance of the initial subpoena and NorthShore's response thereto were in direct violation of the Act. The issuance of the initial subpoena by Pfeifer and NorthShore's compliance with the subpoena ignored every applicable provision of section 10(d) of the Act: (1) the subpoena was issued without a written order of the circuit court; (2) because no order was even sought, no notice of any motion seeking such an order was provided to either Ryan or NorthShore; (3) because no motion had been filed, no hearing was held at which any objections could be made by Ryan or the treatment provider prior to the issuance of the subpoena; (4) NorthShore complied with the subpoena despite the requirement that the subpoena be accompanied by a written court order authorizing the issuance of the subpoena; and (5) the subpoena lacked the mandatory disclosure language required by the Act. It is clear that Pfeifer and NorthShore violated the Act by serving and responding to the initial subpoena.

¶ 23    It is also clear that Pfeifer did not comply with the Act when he sent the reissued subpoena to NorthShore, because the reissued subpoena once again did not contain the mandatory disclosure language required by section 10(d) of the Act. NorthShore failed to properly comply with the reissued subpoena when it delivered the subpoenaed records to Pfeifer's law office rather than to the circuit court, which completely undermines the entire purpose of the Act. Here, the initial and reissued subpoenas clearly directed NorthShore to deliver the subpoenaed records to the circuit court. It is clear that Pfeifer and NorthShore violated the Act by serving and responding to the reissued subpoena.

¶ 24    We now turn to Ryan's arguments that the circuit court erred in entering summary judgment in favor of Linda. He argues that Linda should be held vicariously liable for Pfeifer's violations of the Act. In his appellate brief, Ryan asserts that

> "Pfeifer issued the improper subpoena at Linda's behest and as her attorney. [Linda] knew about the violations of the Act by Pfeifer. [Linda] then threatened Ryan that she would capitalize on the disclosure of his mental health records to her advantage in the litigation between them. This represents Linda's ratification of Pfeifer's violation of the Act."

¶ 25    Ryan, however, fails to provide any citations of the record to support these conclusions, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) (providing that an appellant's brief shall contain "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). Ryan does not direct our attention to any evidence in the record tending to show that Linda authorized Pfeifer to subpoena Ryan's mental health records, that she had any knowledge that Pfeifer did so, and points to no evidence that refutes Linda's evidence denying any knowledge or involvement in the issuance of the subpoena. Simply put, Ryan has failed to demonstrate that the record reflects any genuine issue of material fact as to whether Linda could be held vicariously liable for any violation of the Act. We therefore have no basis from which we might conclude that any genuine issue of material fact exists as to whether Linda violated the Act and, therefore, affirm the circuit court's order granting summary judgment in favor of Linda on count II of Ryan's amended complaint.

¶ 26    Next, Ryan argues that he did not waive or forfeit any of Pfeifer's and NorthShore's violations of the Act by failing to raise an objection to the issuance of the reissued subpoena, or by failing to object when his mental health records were handed to Judge Vega in open court at the criminal contempt hearing. He contends that "the Act expressly prohibits intentional waiver of its provisions." In support, he cites section 14 of the Act, which provides, "[a]ny agreement purporting to waive any of the provisions of this Act is void." 740 ILCS 110/14 (West 2014). He further relies on *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 59 (2002), for the proposition that he could only waive his statutory privilege if he introduced his mental health condition into the contempt proceeding.

¶ 27    We agree with Ryan's conclusion that he neither waived nor forfeited his statutory privilege, but not with his reasoning. Ryan's reliance on section 14 of the Act conflates contractual waiver, in which a party purports to knowingly waive a privilege under the Act, with the concept of forfeiture, which results from the failure to assert a privilege under the Act. Ryan does not identify any agreement in which he purported to waive his privileges under the Act. Therefore, section 14 of the Act is plainly inapplicable. Ryan's reliance on *Reda* is also misplaced. Here, the circuit court did not conclude that Ryan waived any privileges against the disclosure of his mental health records but instead found that his failure to object to the reissued subpoena resulted in forfeiture of his damages claim. When conducting *de novo* review, however, we review the circuit court's judgment, not its reasoning. *Leonardi*, 168 Ill. 2d at 97.

¶ 28    We do not understand the circuit court's explanation as to how Ryan forfeited his right to pursue a damages claim under the Act. The circuit court's explanation for its judgment was premised on the facts that (1) the circuit court allowed Pfeifer to reissue the subpoena, thereby "curing" the complete lack of a motion and notice of the initial subpoena, and (2) Ryan effectively forfeited his claims as an aggrieved person under section 15 of the Act by failing to object in the contempt proceedings when Pfeifer handed Judge Vega an open envelope containing Ryan's mental health records. But regardless of whether the order allowing the reissued subpoena "cured" any absence of a motion and lack of notice defects in the initial subpoena, Ryan's complaint asserted that he was injured as a result of Pfeifer's issuance of the initial subpoena, which was served without a court order, prior notice, or the mandatory disclaimer language of the Act, and NorthShore's compliance with a facially noncompliant subpoena. To the extent that the circuit court reasoned that the reissued subpoena cured any injury resulting from the initial subpoena, that reasoning is flawed.

¶ 29    We have previously found that "[n]othing in section 10(d) excuses a court order when the records are first examined by the trial judge. [The defendant's] subpoena violated the specific terms of section 10(d) because he served it without first obtaining a court order." *Mandziara*, 299 Ill. App. 3d at 599. Ryan was aggrieved by Pfeifer's and NorthShore's noncompliance with the Act, and he allegedly suffered damages; he did not become "unaggrieved" when the circuit court ordered the reissuance of the subpoena. And even if the reissued subpoena "cured" the defects in the initial subpoena—*i.e.*, the failure to file a motion, lack of notice, and the absence of a written court order—the reissued subpoena could not plausibly "cure" any injuries that Ryan suffered as a result of the initial subpoena; the reissued subpoena could not retroactively restore Ryan's statutory privilege. In other words, the bell had been rung.

¶ 30    Furthermore, the circuit court did not cite any authority to support its explanation that Ryan forfeited his claims under the Act by failing to raise an objection in the contempt proceedings when Pfeifer handed Judge Vega the opened envelope containing Ryan's mental health

records, which NorthShore sent directly to Pfeifer. Nor do Pfeifer's and NorthShore's appellate briefs identify any such authority. Having examined the Act, we find no support for the proposition that a person claiming to be aggrieved under the Act as a result of conduct that took place in a separate judicial proceeding must object or assert their claims in that proceeding, or that a failure to object to the noncompliance with the Act in the earlier proceeding precludes a separate action seeking redress for a violation of the Act.

¶ 31    Pfeifer relies on *Mandziara* to argue that, in the context of a child custody dispute, to be "aggrieved" under the Act, Ryan needed to show "that there was a disclosure of the records at issue and/or that the violation of the Act adversely impacted the custody award." Pfeifer argues that he never inspected the records and the trial court refused to conduct an *in camera* review of the records. Pfeifer's argument is inconsistent with the Act. Nothing in the Act imposes any limits on its application to child custody cases or establishes a requirement that noncompliance with the Act must result in a ruling adverse to the person whose mental health records were improperly subpoenaed. As we recited above, section 15 of the Act provides, "Any person aggrieved by a violation of this Act may sue for damages, an injunction, or other appropriate relief. Reasonable attorney's fees and costs may be awarded to the successful plaintiff in any action under this Act." 740 ILCS 110/15 (West 2014). The plain language of the Act does not limit "aggrieved" to only those whose mental health records have been disclosed; the plain language of the Act is broad enough to include any injury that is directly traceable to "a violation of [the] Act."

¶ 32    Pfeifer's argument is also inconsistent with *Mandziara*. There, the defendant—an attorney—subpoenaed the plaintiff's mental health records without first obtaining a court order. *Mandziara*, 299 Ill. App. 3d at 595. The hospital produced the records and delivered the records to the circuit court judge in open court. *Id.* The judge reviewed the records in open court and then questioned the plaintiff—who was not represented by counsel—about the contents of the records. *Id.* After the hearing, the circuit court awarded the plaintiff's ex-husband sole custody of the plaintiff's children. *Id.* The plaintiff filed an amended complaint, asserting that the defendant attorney violated the Act by failing to obtain a court order before issuing the subpoena. *Id.* at 595-96. We reversed the circuit court's entry of summary judgment in the defendant's favor, finding in part that the defendant violated section 10(d) of the Act by issuing the subpoena without first obtaining a court order. *Id.* at 599. We found that

> "Section 15 of the Act provides for a damages claim by a person aggrieved by a violation of the Act. We have said: 'The statute clearly indicates the legislature intended to modify absolute common law witness immunity in order to provide a remedy of damages against persons who violate the act.' [Citation.] We believe the same legislative intent applies to those who are aggrieved by any violation of section 10(a)(1) or section 10(d). The nature and extent of those damages are matters to be determined on another day. [Citation.]" *Id.* at 601.

¶ 33    *Mandziara* squarely supports Ryan's argument that those who are aggrieved by *any* violation of section 10(d) may pursue damages under section 15 of the Act. See *id.* We therefore reject Pfeifer's argument that Ryan could not, as a matter of law, be "aggrieved" by the issuance of the initial subpoena simply because the records were not publicly disclosed or that he did not suffer an adverse ruling as a result of an improper subpoena.

¶ 34    For its part, NorthShore relies on *Mandziara* to support its argument that it cannot be liable for responding to the initial subpoena because, like the hospital in *Mandziara*, it provided the

subpoenaed records directly to the circuit court. We disagree. In *Mandziara*, we made it clear that

> "Mandziara's appeal in this case concerns only section 10(d) of the Act. We need not revisit our summary order in [*Mandziara v. Northwest Community Hospital*, No. 1-94-4045 (1996) (unpublished order under Illinois Supreme Court Rule 23) (*Northwest Community Hospital*),] Mandziara's earlier appeal of her unsuccessful claim against the Hospital. The order did not refer to section 10(d). Nothing we say here should be taken as a statement regarding the correctness of our earlier order." *Id.*

¶ 35 *Mandziara* does not support NorthShore's argument and instead works against NorthShore. First, any discussion in *Mandziara* about our unpublished order in the separate appeal relating to the mental health provider that delivered the records directly to the circuit court has no precedential effect and cannot be cited or relied on by NorthShore to support its argument. Ill. S. Ct. R. 23(e)(1) (eff. Apr. 1, 2018). Furthermore, in *Mandziara*, we did not adopt or endorse the earlier decision in *Northwest Community Hospital*, and we were in no position—either jurisdictionally or prudentially—to revisit that order. And as stated in *Mandziara*, our unpublished order in *Northwest Community Hospital* did not even address section 10(d), which clearly prohibits a hospital from responding to a subpoena that is not accompanied by a court order or the patient's written consent. For all of these reasons, we reject NorthShore's argument that *Mandziara* controls whether NorthShore may be held liable for improperly responding to a subpoena that did not comply with plain language of the Act, even though NorthShore, in compliance with the first subpoena, sent the subpoenaed records to the circuit court. A plain reading of the Act and our opinion in *Mandziara* leads us to find that a person aggrieved by the disclosure of mental health records in violation of the Act—whether it be a person, hospital, or any other entity—may seek relief pursuant to section 15 of the Act. There is no exception for a health care provider that provides the subpoenaed records directly to the circuit court where the Act is not strictly complied with.

¶ 36 Both Pfeifer and NorthShore emphasized at oral argument that Ryan cannot establish that any violation of the Act proximately caused him any injury. Neither Pfeifer's nor NorthShore's appellate briefs, however, advance any meaningful argument that Ryan failed to allege or present sufficient facts to demonstrate proximate cause. Regardless, our supreme court has explained that the issue of proximate cause is ordinarily a question of fact to be decided by the trier of fact (*Thompson v. Gordon*, 241 Ill. 2d 428, 438-39 (2011); *Heastie v. Roberts*, 226 Ill. 2d 515, 545 (2007)) but may be decided as a matter of law "where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause [citation]" (*Young v. Bryco Arms*, 213 Ill. 2d 433, 447 (2004)). Ryan's amended complaint alleged that he suffered injuries as a result of learning that Pfeifer had subpoenaed Ryan's mental health records and that NorthShore had complied with the subpoena, and—as we discuss below—he testified at his deposition that he experienced emotional distress as a result of learning that his mental health records might be exposed. We find that Ryan has, at a minimum, established a question of fact as to whether Pfeifer's and NorthShore's violations of the Act were a proximate cause of his injuries.

¶ 37 Having determined that Ryan sufficiently alleged that he was aggrieved under the Act and that he did not forfeit his damages claim by failing to object in the contempt proceedings, we turn to Ryan's argument that there were genuine issues of material fact with respect to damages. He argues that he provided "uncontroverted testimony of the physical and emotional

harm he suffered as a direct consequence of [d]efendants' violation of the Act." He asserts that he testified that he began experiencing anxiety "the first day I became aware that my medical records had been exposed; and on that day I vividly remember being violently ill, throwing up, [and] overwhelmed with cold sweat." He testified that his anxiety lasted "[a] long time." He had not sought any "professional help," but his "anxiety, fear, stress, upset stomach, headaches, lack of sleep, [and] sadness" only "marginally" dissipated after Judge Vega ultimately denied Pfeifer's request for an *in camera* inspection of the records. Ryan testified that his work was "interrupted" by his anxiety, which he explained meant that "sometimes it was hard to even stay focused on a meeting."

¶ 38    We must admonish Ryan again, however, that his appellate brief repeatedly asserts facts that are not supported by citations of the record and amount to little more than conjecture. His argument that between July 29, 2015, and November 3, 2015, his mental health records "were disclosed and accessible in the courthouse where the custody of his children could be decided" contains no citation of the record, and he cites no facts in the record as to how the records were "accessible." Instead, the record reflects only that NorthShore delivered the records to Judge Panarese in response to the initial subpoena. Ryan also asserts that his records "could have been seen by anyone" and that "records could not be unseen." But nothing in the record affirmatively establishes where the records were other than in the possession of Judge Panarese or that anyone ever looked at the records. Ryan also asserts in his appellate brief that an "element of [his] damages" is "his fear of seeking treatment lest his mental health records will be disclosed again amid the vitriol of his post decree relationship with Linda." Once again, there is no citation to the record reflecting that Ryan ever made this assertion at any time prior to his appellate brief. Ryan's unsupported assertions violate Rule 341(h)(7) and do nothing to advance his appellate arguments. We therefore strike any statements of alleged fact in Ryan's appellate brief that are not supported by proper citations to the record on appeal.

¶ 39    Pfeifer and NorthShore first argue that there is no evidence that Ryan's mental health records were seen by anyone and therefore he could not have been "adversely affected" by the subpoena. As we discussed above, this argument lacks merit. *Supra* ¶¶ 29-33. Section 15 of the Act provides a remedy to a person aggrieved by a violation of the Act and is not limited to injuries arising from the disclosure of the mental health records. See *Mandziara*, 299 Ill. App. 3d at 601 (suggesting that "[t]he nature and extent" of any damages arising from violations of section 10(d) of the Act should be determined by a trier of fact).

¶ 40    Pfeifer and NorthShore further argue that Ryan failed to present competent evidence of his emotional distress in response to defendants' motions for summary judgment. Pfeifer and NorthShore contend that Ryan cannot simply rely on the allegations in his complaint that he suffered emotional distress and that his "self-serving" deposition testimony was insufficient to create a genuine issue of material fact. Pfeifer and NorthShore rely on *Robbins v. Kass*, 163 Ill. App. 3d 927 (1987), to argue that Ryan's alleged "crying, sleeplessness, increased migraine headaches and upset feelings" are not severe enough to satisfy "the physical illness or injury requirement of an emotional distress claim." NorthShore additionally relies on *Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, to argue that Ryan was required to allege a contemporaneous physical injury or impact in order to recover damages for emotional distress.

¶ 41    We find that Ryan's deposition testimony was not so self-serving that it would be inadmissible at trial.

"Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving. [Citation.] As we have repeatedly emphasized over the past decade, the term 'selfserving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment. [Citations.]" *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013).

¶ 42    Here, Ryan testified at his deposition—the transcript of which was before the circuit court at summary judgment—that his anxiety started "the first day [he] became aware that [his] medical records had been exposed"; that he was vomiting, overwhelmed with cold sweat, and suffered the effects of an upset stomach; and that his anxiety lasted "a long time." He also testified that he experienced fear, an upset stomach, a lack of sleep, fear that he would not be able to see his children, and sadness, all of which "only marginally" dissipated after Judge Vega denied Pfeifer's request for an *in camera* inspection of the records. We fail to see how Ryan's testimony would be inadmissible at trial, since it was based on his own personal knowledge. See Ill. R. Evid. 602 (eff. Jan. 1, 2011) ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony."). The fact that Ryan did not seek medical treatment for his conditions or identify any evidence to corroborate his testimony goes to the weight of his testimony and his credibility but does not affect the admissibility of his testimony. Such testimony is routinely considered by a fact finder in the determination of liability and the assessment of damages.

¶ 43    Furthermore, our supreme court has recognized a distinction between freestanding claims based on emotional distress, such as intentional or negligent infliction of emotional distress, and "a claim of liability for negligence or other personal tort in which the act or omission of the defendant caused emotional distress for which damages may be recovered." *Schweihs*, 2016 IL 120041, ¶ 67 (Garman, J., specially concurring) (discussing *Clark v. Children's Memorial Hospital*, 2011 IL 108656); see also *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 24 (distinguishing between freestanding infliction of emotional distress claims and the assertion of emotional distress as an element of damages for a personal tort, such as tortious interference with the right to possess a corpse). We therefore reject NorthShore's argument that Ryan was required to allege a contemporaneous physical injury or impact, as the physical impact rule applies to freestanding claims of negligent infliction of emotional distress, but the physical impact rule does not apply here where the plaintiff seeks damages for emotional distress that is "part and parcel of the damage *that results from* the wrong that was committed." (Emphasis in original.) *Cochran*, 2017 IL 121200, ¶ 24.

¶ 44    Finally, Pfeifer's and NorthShore's reliance on *Robbins* in support of the argument that Ryan's alleged injuries are not severe enough to satisfy "the physical illness or injury requirement of an emotional distress claim" is inapposite, because *Robbins* involved a freestanding negligent infliction of emotional distress claim rather than a claim seeking damages for emotional distress. Furthermore, damages for emotional distress are available to prevailing plaintiffs in cases involving personal torts, such as defamation, conversion, and misappropriation of identity (*Clark*, 2011 IL 108656, ¶ 111), and medical negligence (*Babikian v. Mruz*, 2011 IL App (1st) 102579, ¶ 19). We see no principled basis for why a

person aggrieved under the Act should not be permitted to recover emotional distress damages arising out of violations of section 10(d) of the Act.

¶ 45 In sum, Ryan presented sufficient, competent evidence of damages in response to Pfeifer's and NorthShore's motions for summary judgment from which reasonable minds could reach different conclusions, thereby demonstrating the existence of a genuine issue of material fact. Therefore, the circuit court's entry of summary judgment in favor of Pfeifer and NorthShore is reversed. We further find that the circuit court erred by denying Ryan's cross-motion for summary judgment on counts I and III of his amended complaint, as there is no genuine issue of material fact as to whether Pfeifer and NorthShore violated section 10(d) of the Act by issuing and complying with the initial subpoena. Ryan was therefore entitled to partial summary judgment on the issue of liability for counts I and III of his amended complaint. Pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we enter partial summary judgment in favor of Ryan and against Pfeifer and NorthShore on counts I and III of Ryan's amended complaint on the issue of liability. We remand this matter for trial on the issues of proximate cause and damages.

¶ 46                                        III. CONCLUSION
¶ 47 For the foregoing reasons, we affirm the circuit court's entry of summary judgment in favor of Linda on count II of Ryan's amended complaint. We reverse the circuit court's entry of summary judgment in favor of Pfeifer and NorthShore on counts I and III of the amended complaint, enter partial summary judgment in favor of Ryan on counts I and III of the amended complaint on the issue of liability, and remand for further proceedings.

¶ 48 Affirmed in part and reversed in part; judgment modified.
¶ 49 Cause remanded.